# Commonwealth *versus* Lehigh Valley Railroad Company.

# Commonwealth *versus* Lehigh Coal and Navigation Company.

1. The act of April 29th 1844 (P. L. 497), § 32, designates "all mortgages, money owing by solvent debtors, whether by promissory note, penal, or single bill, bond, or judgment," etc., as subjects to "be valued and assessed" and "subject to taxation." By section 34 of the same Act, the County Commissioners of each county were required annually at the

[Commonwealth *v.* Lehigh Valley R. R. Co.]

time of making county rates and levies, to assess these subjects, with many others designated "for the use of the Commonwealth, three mills on every dollar of the value thereof."

By the Act of 29th April, 1844 (Purd. 1387-8, pl. 176 et seq.), § 8, of the Act of 30th April 1864 (P. L. 221), and the Act of May 24th 1878 (P. L. 126), a Board of Revenue Commissioners is created, now consisting of the Auditor-General, the State Treasurer, and the Secretary of the Commonwealth. These Acts require the City and County Commissioners to furnish to the board, once in three years, a "statement under oath of the return made by the assessors of the value in the aggregate of all the property liable to state tax in the said cities and counties respectively, distinguishing real from personal estate."

The state board is thereupon to make a statement showing the amount of taxable property in each city or county, and the amount of state tax to be raised thereon. The State Treasurer issues his precepts requiring the City and County Commissioners "to assess and collect the state tax in their respective cities and counties as provided by law, on the amount of the valuation and property so ascertained to be liable to taxation for state purposes," and the counties are then primarily liable for the tax.

The Act of June 7th 1879 (P. L. 112), § 17, and the supplementary Act of June 10th 1881, declare that "mortgages," etc. "shall be and are hereby made taxable at the rate of four mills on every dollar of the value thereof annually." These Acts require that corporations paying interest on taxable loans shall deduct the tax from the interest, and pay it into the state treasury. They do not provide any means for the valuation and assessment of the bonds.

After the passage of the Act of 1879, the regular triennial assessment was made throughout the state. The County Commissioners made returns to the State Revenue Board under oath, purporting to include the assessment of all "mortgages," etc., in their respective counties, and on October 20th 1880 the Revenue Board made a statement showing the valuation of all "mortgages," etc., in the Commonwealth, and apportioning the tax thereon among the several counties.

Upon this valuation the tax was collected by the counties and paid into the state treasury for the years 1880 and 1881.

The accounting officers of the Commonwealth afterwards settled an account against certain corporations for the four mills state tax on interest on bonded indebtedness, which interest the corporations had paid to resident bondholders, without deducting the said tax. Upon appeals from said settlement of account:

*Held,* that as there was no other means of assessment provided by law, it was the duty of the local assessors, in making the general assessment in 1879, to value and assess corporate bonds, wherever found, in the hands of resident owners. And as in the discharge of that duty, the assessors, acting as officers of the Commonwealth, did make an assessment, purporting to embrace these several objects, made due and proper return thereof, which was accepted and acted upon by the revenue officers of the state, it must be assumed that the officers of the law, acting under the obligation of an oath, performed their full duty in the premises, that their return was full and true, and embraced not only all classes of subjects, but all objects taxable by law, including the loans of Lehigh Valley Railroad Company, so far as held by resident owners, and that, therefore, the tax upon them has been paid.

*Held further*, that the said four mills tax can in no sense be considered as a tax upon the corporation, its property, or its franchises; it is upon

[Commonwealth *v.* Lehigh Valley R. R. Co.]

the corporation's indebtedness in the hands of its creditors, a tax upon the property of individual citizens of the state. The corporation is to be charged as a collector only, and the taxes which it was charged to collect having been paid through other agencies of the Government, the corporation stands discharged therefrom.

2. The word "value," as used in the Acts of 1879 and 1881, means the actual value, and not the nominal or par value of bonds and mortgages.

3. A legal ascertainment of that value is essential to the assessment of a valid tax.

4. The return by the corporation of the amount of its indebtedness does not constitute an assessment. Neither does the account settled by the Auditor-General against the corporation. A valid assessment must precede the collection of the tax.

5. As the Acts of 1879 and 1881 contain no provision for assessment and valuation, they do not constitute an independent scheme for the taxation of corporate loans, but must be aided by the machinery of the Act of 1844.

6. Upon a writ of error to a judgment entered by the court without the intervention of a jury, under the provisions of the Act of April 22, 1874 (P. L. 109), the Supreme Court can hear and determine only questions of law arising upon bills of exception to the rulings of the judge relating to the evidence or law of the case.

June 1st 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

WRITS of error to the Court of Common Pleas of *Dauphin county :* Of May Term 1883, Nos. 13, 14, 15, 16.

These cases arose in the court below upon appeals by the respective corporations defendant from settlements made against them by the accounting officers of the Commonwealth, under the Acts of June 7th 1879 (P. L. 112), § 17, and June 10th 1881 (P. L. 99), § 2, upon their bonded indebtedness for the years 1880 and 1881.

The companies did not deduct the four-mill tax from the interest on their bonded debt, and pay the same into the state treasury, for the years stated, as provided by the Acts of 1879 and 1881, but paid the interest to their creditors in full, as it matured.

The defendants, under protest, made report of their bonded indebtedness for the years in question. The Auditor-General thereupon settled accounts against the Lehigh Valley Railroad Company for tax at four mills upon bonds not shown to be held by non-residents, claiming as tax for 1880 the sum of $98,792, and for 1881, the sum of $37,140.

To which settlements specifications of objections and appeals were filed, setting forth, inter alia, that the taxes sought to be collected had been paid through other channels, and that

the State, having received them once, was not entitled to recover them again.

The cases were tried together before the court, without the intervention of a jury, under the Act of April 22d 1874 (P. L. 109). The facts were substantially the same in each case, and the legal questions identical.

There were produced in evidence the returns to the Revenue Board, made in 1880, by county commissioners, showing by townships, wards, and boroughs the assessed "value of all mortgages, money owing by solvent debtors, etc.," in each county and city of the Commonwealth. Also the duplicate valuation made October 20th 1880, by the Revenue Board (consisting of the Auditor-General, the State Treasurer, and the Secretary of the Commonwealth), showing the "value of all mortgages, money owing by solvent debtors, etc.," and apportioning among the counties the four mills tax thereon, amounting to $392,233.23.

The State Treasurer was called, and testified that upon the valuation made by the Revenue Board, the taxes had been paid in full for 1880 and 1881.

The court (McPherson, J.) found, inter alia, the following facts:

7. For the year 1880, the commissioners of every county of the Commonwealth made returns to the Revenue Commissioners as required by law, of the valuation of "all mortgages, money owing by solvent debtors," etc., within their respective counties, which returns were adopted by the said Revenue Commissioners, and a record of such valuation was by them transmitted to each county, upon which valuation the State tax upon mortgages was assessed. This valuation remained unchanged for the year 1881, and no other valuation or assessment of mortgages for the purpose of State taxation was made for 1880 or 1881.

8. The taxes assessed upon said valuation and record for the years 1880 and 1881 have been paid in full to the Commonwealth.

The findings of fact are more fully referred to in the opinion of the Supreme Court, infra.

In its conclusions of law upon the fact as found, the court used the following language:

["There are other questions to which we will hereafter refer, proceeding now to the discussion of an objection which goes to the entire claim, and which, after much reflection and careful examination, seems to us to be fatal, viz.: That the taxes now sued for are presumed to have been paid.] The tax in question is claimed under the seventeenth section of the Act of June 7th 1879, and its supplement of June 10th 1881, and

[Commonwealth *v.* Lehigh Valley R. R. Co.]

under either Act is upon the 'mortgages' or bonds secured thereby of the defendant corporation. It is in no sense a tax upon the corporation itself, either upon its franchises or its property ; it is upon the corporation's bonds in the hands of its creditors, and is consequently a tax upon property belonging to individual citizens of the State. The defendant is simply a collector, and, as we have seen is only liable if, and because, it fails to collect. [The tax is one which has been long in force, and was not imposed by the Acts of 1879 and 1881.] They only change the rate from three mills to four mills, and so far as they enumerate subjects of taxation, are merely re-enact-ments of the earlier law. We regard these two Acts as part of the revenue system of the Commonwealth, and it becomes necessary therefore to consider the former statutes in order to determine their proper place and effect. . . . .

["When therefore the Act of June 7th 1879, was passed, there existed a complete system for assessing and collecting State taxes upon mortgages. That Act made no change in the method of valuation or assessment ; it is wholly silent on that subject ; it simply declared certain subjects to be taxable at four mills upon their value, and as to mortgages of corpora-tions owned by individuals, directed that the corporation should deduct the tax upon the value from the interest, and pay it over to the State treasury.] But how was the value to be ascertained ? The words of the section are : 'Made taxable for State purposes at the rate of four mills on every dollar of the value thereof annually:' This phrase, 'every dollar of the value thereof,' occurs also in section thirty-four of the Act of 1844, and clearly means actual value. . . . . Moreover, section seventeen itself of the Act of 1879, has construed this phrase in the same way by providing a method for ascertaining the actual value of bank shares, which are taxed by the same words and in the same sentence as the mortgages now in ques-tion. [There is no other machinery for ascertaining the actual value of mortgages, however, than that provided by the earlier laws, and the evidence before us shows that it was put in operation.] The County Commissioners made returns to the Revenue Board of all mortgages valued for State taxation ; the returns were accepted and duly acted upon by the Board, the taxes were assessed, collected, and, as the State Treasurer testifies, fully paid for the years in question.

"We must presume, however much in the face of common knowledge, that the Assessors, the County Commissioners and the Revenue Board have done their duty, and must give to their solemn and recorded acts the *prima facies* of truth. We have no evidence of any kind tending to rebut the presump-tion that their official duties, performed under oath and aided

[Commonwealth *v.* Lehigh Valley R. R. Co.]

by extensive and unusual statutory powers, have been fully and faithfully discharged, and we cannot act upon common fame. The Commonwealth must make out her case, both because the right to a tax must be clear before collection can be made, and because she comes into court like any other suitor, having no peculiar advantage of presumption or intendment. Here she claims to recover a tax, collectible by her own careless legislation in two ways, and is met with evidence tending to show that all taxes upon the property in question have been assessed and collected through one of her agencies. Without more, how can we say that this is not true? . . . Moreover, there is certainly no presumption, whatever the negligence of assessors may be, that none of these bonds were included in the assessment of 1879, and if some were included they are still there and have paid tax already for 1880 and 1881. But how can their number be ascertained by the defendant? [It has no control over the process of assessment or over the ordinary collectors; it is only one of the State's agents without information as to the action taken by the others, and commanded to collect a tax without even being furnished with a duplicate of its assessment. And further, this tax being upon the actual value of the bonds, how much shall the corporation retain? It has been given no power to make a valuation, and none is made by the Act itself. This is done by another agency, of whose proceeding the defendant has no knowledge; how then can it calculate the sum it must deduct? The Act of 1881, does not materially differ from the Act of 1879, and we need not separately discuss its provisions. Both leave untouched the old method of valuation and assessment, and the same presumption of payment applies to the taxes claimed under the later statute. . . . The Act of 1881 is a supplement to the Act of 1879, and was intended to re-enact and supply the seventeenth section, but in the failure to provide for a valuation of mortgages it is like the original, and the remarks just made apply to it with equal force. In this respect it only differs from the Act of 1879 by providing for a return by the corporation of 'the amount of such indebtedness,' and this does not seem to us to be any nearer a perfect valuation.]"

SIMONTON, P. J., concurred in the above opinion.

Judgment for defendants in each case.

The Commonwealth excepted to those portions of the conclusions of law above included within brackets and to the judgments.

The court overruled the exceptions, and judgment was entered for the defendants in each case; whereupon the Commonwealth took these writs, assigning for error, inter alia, the dismissal of the exceptions.

[Commonwealth v. Lehigh Valley R. R. Co.]

*Robert Snodgrass*, deputy attorney-general (*Lewis C. Cassidy*, attorney-general, with him), for the Commonwealth.—The Act of 1844 was repealed by the Acts of 1879 and 1881. If not in terms, of necessity by implication. No presumption of payment of taxes can, in any case, arise as against the Commonwealth : Commonwealth v. Baldwin, 1 Watts 54 ; McKeehan v. Commonwealth, 3 Barr 151 ; Commonwealth v. Hutchinson, 10 Barr 466. The evidence in these cases was not sufficient to sustain such presumption.

An assessment is complete when the property has been listed, and a valuation and apportionment made : Cooley on Tax. p. 258. The reports made by the companies constitute a sufficient valuation ; and the settlement a sufficient assessment under the Act of 1811 : D. L. and W. R. R. Co. v. Commonwealth, 16 Smith 69 ; Commonwealth v. Phœnix Iron Co., 89 May T. 1869 (not reported). The word "value," as it occurs in the taxing statutes, means nominal or par value : Commonwealth v. Phœnix Iron Co., supra. Under the Acts, it was the duty of these corporations to retain the amount of State taxes ascertained to be due from their reports. The Acts of 1879 and 1881, as taxing statutes, are complete and sufficient in themselves.

*M. E. Olmsted* and *Charles Gibbons*, for defendants in error.—The fact of assessment was established by the Commonwealth's own official records made by her duly appointed and sworn officers ; and the fact of payment of the taxes was proven by the oral testimony of the state treasurer. The legal presumption is that the assessment was just as full and complete as the sworn records show it to have been, and that, as said records show upon their face, it includes all mortgages, etc., within this Commonwealth. As to the doings of public officers, omnia rite acta præsumuntur : Philadelphia v. Commonwealth, 2 Smith 451 ; City of New Orleans v. Louisiana Savings Bank, 31 La. Ann. 637 ; Delaware and Hudson Canal Co. v. Walsh, 33 Leg. Int. 349, and cases there cited. This presumption holds good even as against the Commonwealth : Commonwealth v. A. and G. W. R. R. Co., 3 Smith 9–19 ; Fletcher v. Peck, 6 Cranch 87. The court below having found as a fact that all mortgages, etc., have been taxed, the Supreme Court will not re-try the case upon its merits, but will treat the finding of facts below as conclusive : Jamison v. Collins, 2 Norris, 359 ; Lee v. Keys, 7 Norris 175. It having been shown that all bonds and mortgages within the Commonwealth have been taxed, it must follow that the particular bonds, including those issued by the Lehigh Valley Railroad Company, which go to

make up the aggregate, have been taxed. The Commonwealth, therefore, having once received these taxes, is not entitled to recover them again. The word "value" in the taxing statutes, clearly means actual, not nominal or par value : Fox *v.* Phelps, 17 Wendell 899 ; 1 Whart. on Evidence 449 ; Commonwealth *v.* Phœnix Iron Co., 89 May T. 1869 (not reported). The foundation of taxation by value is a valid assessment : Cooley on Taxation 259 ; Hilliard on Taxation 290 ; Thurston *v.* Little et al., 3 Mass. 432 ; Commonwealth *v.* Blair County, 2 Pearson 416 ; Webb *v.* Reinhard, 23 Smith 376 ; Commonwealth *v.* Phœnix Iron Co., supra. If any bond of these companies escaped taxation in the general assessment made in 1880, it follows that it was not assessed. How, then, could the companies have collected a tax ? In the reports to the Auditor-General the corporation states that its bonds differ in actual and in market value, and it disavows any attempt at valuation or assessment. The company was not authorized to assess : Ruth's Appeal, 10 Weekly Notes 498 ; Bank of the Commonwealth *v.* The Mayor, 43 N. Y. 184. See, also, The Railroad Tax Cases, 13 Fed. Reporter 722. The account settled by the Auditor-General does not constitute an assessment. It does not purport to contain any valuation of the bonds. It was not made until after the time when it is alleged the taxes became due. It is made against the wrong party ; a legal assessment cannot be made against the corporation, which is merely a collector, but must be made against the bondholder, the owner of the property taxed, and he must have notice and the right of appeal : Cooley on Taxation 265–268 ; Ervine's Appeal, 4 Harris 256 ; Philadelphia *v.* Miller, 13 Wr. 448 ; Railroad Tax Cases, 13 Fed. Rep. 722. The Acts of 1879 and 1881, as taxing statutes, are in themselves insufficient, and inoperative for want of machinery.

Mr. Justice CLARK delivered the opinion of the court, October 2d 1883.

The taxes, which are the subject of this contention, are claimed by the Commonwealth, under the 17th section of the Act of June 7th 1879, and its supplement of June 10th 1881, upon the bonded indebtedness of the Lehigh Valley Railroad Company, for the years 1880 and 1881.

The Company did not deduct the tax of four mills from the interest upon its mortgage debt, and pay the same into the treasury, for the years stated, as provided by the acts of 1879, and 1881, but paid the interest in full, to its creditors, as the same matured.

The Auditor General, therefore, settled an account against the company, for a four-mill tax in each year, upon the entire

amount of its loans and bonded indebtedness, which did not appear to be held by non-residents of Pennsylvania; these settlements were based upon the reports of the company, made, under protest, in compliance with the Acts of Assembly referred to, for the several years in question.

From these settlements appeals were taken, under the provisions of the Act of 1811, to the Court of Common Pleas of Dauphin County. These appeals, with two others, entered by the Lehigh Coal and Navigation Company, involving substantially the same questions of law and fact, were submitted to the court below, without the intervention of a jury, under the Act of April 22d 1874, and were tried together, but one opinion being filed, upon which judgment was entered in each case.

As these four causes have been presented and argued here together, one opinion only will be filed, upon which judgment will be entered in each of the several cases as below.

These several writs of error, having been taken to judgments entered under the Act of 22d April 1874, this court, under the ruling of Jamison *v.* Collins, 2 Norris 359, and Lee *v.* Keys, 7 Norris 175, " can hear and determine only questions of law, arising upon bills of exceptions to the rulings of the judge, relating to the evidence, or to the law of the case ; we cannot go behind his findings of fact, except where in a common law trial before a jury, the assignment of error is such as can be heard and determined by this court ; the writ of error brings up no question as upon motion for a new trial."

On the part of the company, it is contended that the taxes sought to be collected are paid through other channels, and that the State, having received them once, is not entitled to recover them again. Whether, or not, the debt now in suit has been, or is presumed to have been paid, is a question distinctly presented by the facts found, and stated in the decision of the court as follows :—

" VII. For the year 1880, the commissioners of every county in the Commonwealth made returns to the revenue commissioners, as required by law, of the valuation of all mortgages, money owing by solvent debtors, etc., within their respective counties, which returns were adopted by the said revenue commissioners, and a record of such valuation was by them transmitted to each county, upon which valuation the State tax upon mortgages was assessed. This valuation remained unchanged for the year 1881, and no other valuation or assessment of mortgages, for the purpose of state taxation, was made for 1880, or 1881."

" VIII. The taxes assessed upon said valuation, and record for the years 1880 and 1881, have been paid in full to the Commonwealth."

8 OUTERBRIDGE.—7

[Commonwealth *v.* Lehigh Valley R. R. Co.]

The court, in a paper filed supplementary to the opinion and decision, states that the circular letters of the Auditor-General, and other accounting officers of the Commonwealth, the admission of which is assigned for error in the second assignment, were rejected as evidence, and were not considered, nor any fact or conclusion based upon, or influenced by them.

Dismissing, therefore, the second assignment of error, and excluding from our consideration, the circular letters referred to, we have remaining as the basis of the finding of the court.

1. The official return or report of the county commissioners of each county in the Commonwealth, to the board of revenue commissioners, for the year 1880, in tabular form, the names of the several wards, boroughs, and townships in the several counties of the Commonwealth; the amount at which all the personal property, and all other matters and things therein, *made taxable* by the laws of this Commonwealth for state purposes, were valued and assessed, and the gross amount of taxes levied and assessed thereon for state purposes.

2. The valuation of the several counties of the Commonwealth, as fixed and adjusted by the board of revenue commissioners, October 20th 1880, to be and remain as the valuation of the property of the said counties, until the next meeting of the board as provided by the acts of 29th April 1844, 30th April 1864, and 24th May 1878.

3. The testimony of the state treasurer, showing actual payment, by the several counties, of the state taxes, according to, and upon the said adjustment for the years 1880 and 1881.

The official report of the county commissioners, in the several counties, and the adjustment of the board of revenue commissioners, contain, inter alia, the amount of the valuation of "all mortgages, money owing by solvent debtors, whether by promissory note, penal, or single bill, bond or judgment, also all articles of agreement and accounts bearing interest, owned or possessed by any person or persons whatsoever (except notes or bills for work or labor done, and all obligations given to banks for money loaned and bank notes), and all public loans or stocks whatsoever, except those issued by this state or the United States, and all moneys loaned or invested on interest in any other state, and all other moneyed capital in the hands of individual citizens of the state; also, "the tax on the same as the rate of four mills on the dollar."

It is contended, on the part of the Commonwealth, that the testimony admitted is irrelevant; that the valuation and assessments made and the payment of taxes established, by the evidence, were under the Act of April 29th 1844, whilst the claim of the Commonwealth, now in suit, is for taxes upon the bonded indebtedness of the company imposed by the Acts of

1879 and 1881; and that the Act of 1844, so far as it provides for the collection of state taxes upon corporate bonds, was by these later Acts repealed.

It certainly must be conceded, that the tax in question, can in no sense be considered as a tax upon the corporation, its property or its franchises : it is upon the corporation's indebtedness, in the hands of its creditors; a tax upon the property of individual citizens of the state. It is for the law-making power to select the subjects of taxation ; in the exercise of this power the legislature may perhaps impose a tax, not only upon what the citizen owns, but also upon what he owes. This question we will neither discuss nor decide. The act of 1879 is so clear in its provisions, as to preclude the possibility of doubt as to its construction ; the tax of four mills is expressly upon "mortgages," &c., " owned," &c., " possessed by," &c., and no distinction is taken, or discrimination made, between a corporate and an individual indebtedness, except that " all corporations paying interest on loans, hereby taxed for state purposes only, shall deduct the said tax from the said interest, and pay the same into the state treasury." The tax is imposed indiscriminately, upon all mortgages, &c., in the hands of the owner or possessor, but the corporation is made the collector of the tax upon the corporate loan. This was the construction put upon the Act of 30th April 1864, by this court, in the case Maltby v. R. R. Company, 2 P. F. Smith, 148, and the reasons there assigned are equally applicable here.

The Act of 1881, in its first section, provides that all mortgages, money owned by solvent debtors, &c., shall be taxable, at the rate of four mills, &c., for state purposes, in the hands of the owner, or possessor, in precisely the same language of the Act of 1879, and in the second section it is further provided, that " all corporations paying interest on a loan or loans which are taxable for state purposes," &c., " shall report," &c., " the amount of such indebtedness," &c., " and shall pay into the state treasury four mills upon every dollar of such indebtedness so returned," &c.; " and the said tax may be deducted, by the corporation paying the same, from the interest," &c. It certainly was not the intention to tax the debt in the hands of both debtor and creditor, allowing the debtor to defalk from the interest, as this would certainly be a double taxation against the creditor upon precisely the same subject.

If then the corporation is to be charged as a collector only, it follows, that if the taxes which it was charged to collect, have been paid through other agencies of the government, the corporation stands discharged therefrom. It cannot be held for collection of that which has been collected, for payment of

a debt which has already been discharged, and which the state has already actually received.

The Act of 29th April 1844, was the beginning of our present revenue system; that Act repealed all laws theretofore passed for levying taxes for state purposes; it designated, in great detail, the various subjects which should "be valued and assessed," and "subject to taxation," for state purposes; among these in the 32rd section we find "mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment, also all articles of agreement and accounts, bearing interest, owned or possessed by any person or persons whatsoever, except notes or bills, for work and labor done, and bank notes." By the 34th section of the same Act, the county commissioners of each county were required, annually, at the time of making county rates and levies, to assess these subjects, with many others designated, "for the use of the Commonwealth, three mills on every dollar of the value thereof."

By the 17th section of the act of 7th June 1879, and the 1st section of the act of 10th June, 1881, the same subjects enumerated above in the Act of 1844 are merely "made taxable, for state purposes, at the rate of four mills on every dollar, of the value thereof." The words of the Act of 1879, and of 1881, in the clauses referred to, which apportion the subjects of taxation and fix the rate to be imposed, are identical, and are substantially equivalent to the words of the corresponding clause, in the act of 1844, whilst all provide that the rate shall be "upon every dollar of the value thereof."

Thus, therefore, it appears that the things made taxable, under the Acts of 1879 and 1881, were taxable under the Act of 1844, upon the same basis of valuation, for the same purpose; the rate only is different. The phrase, "every dollar of the value thereof," has acquired a well established signification under our revenue system; it means simply the actual value, or worth. The 4th section of the act of 15th May 1841 requires the assessors to value "all objects of taxation, according to the *actual value thereof*, and at such rates and prices, for which the same would separably bona fide sell." The oath of office, which is administered to the assessors, under the 9th section of the Act of 27th July 1842, obligates that officer to value all taxable property, at the rate or price which he shall, "after due examination and consideration, believe the same would sell for, if sold singly and separately, at a bona fide sale, after full public notice." The 3d section of the Act of 15th May 1841, provides, that if any assessor, or assistant assessor, shall knowingly and intentionally assess, rate or value any property "at more or less than he shall know and believe the just cash value

or rate thereof," he shall be guilty of a misdemeanor, &c. It is the duty of the board of revenue commissioners, under section 3d of Act of 1878, to ascertain and determine, " the fair and just value of the property of the cities and counties of the Commonwealth, made taxable by law, adjusting and equalizing the same, as far as possible, so as to make all taxes bear as equally as practicable, upon all the property of the Commonwealth, made or hereafter to be made taxable, for state purposes, *in proportion to its actual value.*"

The Legislature has thus frequently defined the phrase " every dollar of the value thereof " to signifying actual value, and the construction which is deducible from the continued, general and uniform practice and understanding throughout the Commonwealth, is the same. That the same signification was in the legislative mind, at the passage of the Acts of 1879 and 1881, is made clear, by the fact, that shares of stock in banks and savings institutions, are put in the same class with "mortgages, money owing by solvent debtors," &c., are also, and in like manner, made taxable, at the rate of four mills " upon every dollar of the value thereof," and that value is defined by the same Act to be " the actual value in the market where located." It can scarcely be believed that " the value thereof," thus generally and indiscriminately applied to both corporate and individual loans, to bank shares, agreements and accounts, must be construed to have two altogether distinct and different significations, when used but in a single connection.

If, therefore, this loan is taxable in the hands of resident owners, at its actual value, a legal ascertainment of that value is essential to the assessment of a valid tax. The tax of a citizen is the result of the rate, applied to the value of the property which he owns, and he is not taxed until the rate is thus applied, by some legal mode of adjustment; no duty of payment arises, no proceeding to collect can be sustained, until the tax is thus created. Is there any provision in the Act of 1879, or the amendment thereto of 1881, for the making of this valuation? If there is none, these Acts cannot constitute an independent scheme for the taxation of corporate loans, but must be aided by the machinery of the Act of 1844, and if the latter Act is not fully supplied by the former, no implication of repeal could arise, at least, as to the parts not supplied. We can find no such provision in the Acts of 1879 or 1881.

It is contended, however, that the report to the Auditor-General, required by the amendment of 10th June 1881, when accepted and acted upon by the accounting officers, provides an estimate, which may form the basis of an apportionment, and comprehends all the essential processes involved in an

assessment; and further, although the Act of 1879 did not in terms require such a report, yet the report, when made, on demand of the Auditor-General, under the Act of 1811, constitutes a sufficient assessment. That the corporation officers are themselves the assessors, and the acceptance by the State of their valuation, affords an official estimate which is equivalent to an actual assessment. Thus it is conceded that the ascertainment of some basis or valuation, on which to lay the tax, is essential to a valid levy, and that the Act of 1879, taken alone, provides no such basis.

It is a sufficient answer to this suggestion, however, that the report, which is required, is not of the *actual value*,—it is of the *amount* of the indebtedness; and the reports which were made, although in strict compliance with the requirements of the Act, not only do not purport to be valuations, but expressly state that they are not, and recite that the bonds bear different rates of interest, and are of different values. Besides, the tax is in no sense one against the corporation, but against its creditors, as individual citizens of the State, and we cannot see how, or upon what principle of law, the report of the corporation, as to the *amount* of its indebtedness, could be regarded as an assessment, binding upon them, who have been made no parties to it, and have no control over it. There is no community of interest between a debtor and his creditor; their interests are ordinarily adverse. Certainly that cannot be regarded as a valid assessment of an ad valorem tax which is made by persons whose interests are adverse, who are under no official oath or obligation, where the person charged has no notice, no right to interfere for his own protection if he had notice, and no appeal; and when, in fact, there is no adjudication as to actual value.

The report is necessarily conjectural, not even approximate; the residence of the holders is a fact of which the corporation is most likely to be ignorant, as the reports made abundantly show; negotiable securities pass current, and the corporation debtors cannot know the holders. If the report be made of such as are held by resident owners, to the extent only to which they are known to be so held, the danger of escape from taxation, is thereby increased, beyond that which existed under prior legislation, and to avoid this escape was the purpose of this legislation. The present case affords a striking illustration of the fact. The report of the Lehigh Valley Railroad Company, for the year 1880, makes the following exhibit:

[Commonwealth *v.* Lehigh Valley R. R. Co.]

Held by residents of Pennsylvania   .   .   .   $8,874,000

Held by non-residents of Pennsylvania   .   .   839,000

Held by persons whose residence the company has been unable to ascertain (of which amount $6,437,000 were issued in London, and, so far as we know, none have been returned to this country)   .   .   .   .   .   .   . $12,963,000

Held by corporations of Pennsylvania .   .   .   2,265,000

Held in trust for persons whose residence is unknown   .   .   .   .   .   .   .   596,000

                   Total   .   .   .   . $25,537,000

Thus it appears that more than one half of the entire loan is held by persons whose residence is unknown to the corporation. The treasurer of the company states in his report that the interest coupons are payable to the bearer, and negotiable ; that they are seldom presented for payment by the holders of the bonds to which they were originally attached, but usually by bankers, brokers, and others, who frequently do not know the name or residence of the holder of the bond. Moreover, if this report was intended to be made at the end of each year as a basis of taxation and exemption from other taxation for that year, and not the ensuing year, as seems to be conceded in the argument, on both sides, and in the opinion of the court below—then, if the learned counsel of the Commonwealth are correct in their view of this case, the concluding clause of the section under consideration becomes abortive and of no effect.

The clause referred to reads as follows : " And the said tax may be deducted by the corporations paying the same from the interest on such indebtedness, whereupon such indebtedness, whether secured by bond, mortgage, judgment, or otherwise, shall be exempt from other taxation in the hands of the holders thereof."

It is clear that corporate loans can only be made liable to " other taxation" through the ordinary methods of our revenue system. And as the whole process of local assessment must necessarily be fully completed and ended, in each year, before the period of default arrives, on the 15th January, in the ensuing year, how could they then be made liable to " other taxation?" If they have not already been listed and rated, in the general local assessment, they must of necessity, and at all events escape taxation for county and municipal purposes for that year, whether default in obtaining exemption be made or not.

We incline, however, to the opinion, that the first tax of four mills, under the Act of 1879, would be for the year 1880, and the second for the year 1881 ; that as the Act of 1881, was

passed June 10th, after the taxes of that year had accrued, the collection of which was expressly reserved, the report made in November of that year was intended as a basis of exemption from other taxation for the ensuing year. Thus the period of default falls within the time of effecting the local assessments. If, however, this be the proper interpretation, through what channels of information are the respective local assessors to learn of the fact that exemption is secured ? If exemption is effected by payment of the four mills to the State Treasury, how is the assessor to have notice of that payment? " Other taxation " is dependent upon knowledge of this fact, and the law provides no means of official or other notice.

Nor can we agree with the Commonwealth's counsel that the settlement, made by the accounting officers of the state, under the Act of 1811, can be regarded as an assessment. Such a settlement must, of course, be for taxes which the corporation collector failed to collect. As it is the assessment which supports the tax, it must precede the levy, and the levy must precede the settlement. If the settlement is the assessment, then the case is anomalous in this, that we hold the collector for a default which confessedly· could not exist; for, how could the collector, collect a tax which had not been previously assessed ?

We can scarcely suppose, that the second section of the Act of 1881 proceeds upon the erroneous assumption that the actual value of corporate loans upon which interest is paid, however assessed, in all cases, will be rated at par ; we are inclined to construe that section, as fixing the price of exemption from all other taxation at four mills upon every dollar of the indebtedness, held by resident owners, in contra-distinction to the tax of " four mills upon every dollar of the value thereof " in the hands of the creditor. But it is certainly very clear that the terms of exemption and the tax cannot both be enforced, and that it was not the intention that they should. We are of opinion, therefore, that the Acts of 1879 and 1881, taken together, or separately, cannot be regarded as an independent system ; they lack the machinery for their own enforcement, but if taken with other previous enactments, providing that machinery, they have their proper place in our revenue system.

From the date of the passage of the Act of 24th April 1874, until the 7th June 1879, the system for collection of state taxes upon corporate bonds, through the agency of the corporations themselves, was suspended ; the Acts of 30th April 1864, 1st May 1868, and 21st March 1873, had all been repealed. During that period, corporate indebtedness was admittedly only taxable for state purposes under the Act of 1844, and collec-

tion was made through the agency of the local collectors. As the state taxes for the year 1879 were levied before the passage of the Act of June 7th they were levied at the rate of three mills on the dollar, for that year, and the right to collect the taxes thus accrued was expressly reserved, in the last section of that Act. The triennial assessment was made in the year 1879, and by its terms, embraced "all mortgages, money owned by solvent debtors, whether by promissory note, penal or single bill, bond or judgment, also all articles of agreement, and accounts bearing interest, owned, or possessed by any person, whatsoever, (except notes or bills for work or labor done, and all obligations given to banks, for money loaned, and bank notes), and all public loans or stocks, whatsoever (except those issued by this state or the United States), and all moneys loaned or invested on interest in any other state, and all other moneyed capital, in the hands of individual citizens of the state." This designation of subjects is in the precise language of the Act of 1844 Exception is expressly made of such matters and things, as are excluded from the general terms of the designation, and although the Act of 1879 had been previously passed, there is no exception, or exclusion of corporate securities or loans ; the return is in all respects as if the Act of 1879 had not been passed.

The valuation and returns, thus contained in the triennial assessment of 1879, and the adjustment and apportionment of state taxes made thereon, by the board of revenue commissioners, to the several counties, on the 20th October 1880, continued unchanged through the years 1880 and 1881.

If we are correct in the views we have expressed, it follows, that as there was no other means of assessment provided by law, it was the duty of the local assessors, in making the general assessment in 1879, to value and assess corporate bonds, wherever found, in the hands of resident owners. And as in the discharge of that duty, the assessors acting as officers of the Commonwealth did make an assessment, purporting to embrace these several objects, made due and proper return thereof, which was accepted, and acted upon, by the revenue officers of the state, we must assume in such an action as this, brought by the Commonwealth, to recover taxes, that the officers of the law, acting under the obligation of an oath, performed their full duty in the premises, that their return is full and true, and embraced not only all classes of subjects, but all objects taxable by law.

We are thus irresistibly brought to the conclusion that the corporate loan of the Lehigh Valley Railroad Company, in the hands of resident owners was, or must be assumed to have bee embraced in the triennial assessment of 1879, which was ad-

justed by the Board of Revenue Commissioners on the 20th October 1880, and the payment of state taxes upon the apportionment therein embraced the taxes upon that portion of the loan.

If this conclusion is correct, the state has already received their claim in this suit, through the ordinary channels of collection, and is not now entitled to recover the same debt.

We can see no constitutional or other difficulty in the way of obliging the officers of corporations, municipal or private, by appropriate legislation, to assess and collect taxes upon their corporate loans or stocks. This method of reaching subjects, capable of successful concealment, and liable to escape the notice of the most vigilant assessor, has, for many years, been recognized by our courts as a valid exercise of legislative power. It was applied under the 42nd section of the Act of 29th April 1844, to the indebtedness of municipal corporations, in the following provision:

"It shall be the duty of the treasurer of each county, incorporated city, district and borough of this Commonwealth, on the payment of any dividend or interest to any holder or agent claiming the same, on any scrip, bond or certificate of indebtedness, issued by said incorporated city, district and borough aforesaid, to assess the tax herein made and provided for state purposes, upon the nominal value of each and every said evidence of debt; said tax to be deducted by the said treasurer, on the payment of any interest or dividend aforesaid, and the same shall be held by him, until paid over to the State Treasurer; and the said treasurers shall be subject to the same penalties and liabilities now prescribed by existing laws in relation to taxes on bank dividends."

It was not until the Act of 30th April 1864, however, that the system was applied to the loans and indebtedness of private corporations. By the last named Act it was provided that "the officers of incorporated companies, which pay interest," &c., shall before payment of the same, retain from the "depositors, bondholders or creditors, the amount of state tax, imposed by existing laws, and shall pay over the same to the State Treasurer." It was further provided, however, as follows: "And that all the laws regulating the mode of such payment, in regard to treasurers of counties, cities and boroughs, be and the same are hereby extended to the financial officers thereof, and they are hereby required to collect, and pay over the taxes due to the state, on such payments of interest, as provided in this section to be done by officers of incorporated companies; and in case of any officer neglecting, or refusing to retain the same, he shall become personally liable for the amount."

Thus it will be seen that the 42nd section of Act of 1844,

makes particular provision for the assessment and collection of state taxes on municipal indebtedness, and therefore contains, within itself, abundant machinery for its own enforcement.

A special method of assessment being thus provided, the subjects embraced in it, are of course, withdrawn from the ordinary methods pursued under that Act, and the regular general assessment could not be presumed to contain what did not legitimately fall within its range. Whilst the presumption is legitimate that the accepted return of the assessors is full and true, as to all matters falling within its scope, no presumption could arise that the officer transcended his duty, even if the return by the generality of its expression was susceptible of such a construction. In such a case, a return of " all mortgages, moneys owing by solvent debtors," &c., would be construed to cover such mortgages, &c., &c., only as came within the range of the assessor's duty. As this provision of the law of 1844, was incorporated into the Act of 1864, and thus extended to the indebtedness of incorporated companies, the latter Act also possessed the means of its own enforcement. It is urged, however, that the provisions of the Act of 1844, were only extended to the financial officers of corporations, so far as " they regulate the mode of payment," and that the mode of payment does not necessarily embrace the power and process of assessment. Such has not been the construction which this court has put upon the Act of 1864. That Act was first considered by this court in the case of Maltby *v.* R. & C. R. R. Co., 2 P. F. Smith 140; and, although the reasoning of the case is not fully developed in the opinion, it proceeds upon the assumption that the assessment under the Act of 1864, was upon the par or nominal value under the provision incorporated from the Act 1844, and thus the phrase " the laws regulating the mode of payment," was construed to embrace the whole process of assessment and collection. The question was fairly raised, however, elaborately discussed, and distinctly decided in the case of the Commonwealth *v.* Phœnix Iron Company, heard at the January Term 1868, but not reported. In that case, Justice Agnew in delivering the opinion of the court says:

" We think the valuation and assessment, according to the thirty-second section of the Act of 1844, was not an essential pre-requisite. The third section of the Act of 30th April 1864, under which the return was made, provides that all the laws regulating the mode of such payment, in regard to treasurers of counties, cities, and boroughs, shall be extended to the financial officers of the companies. The forty-second section of the Act of 1844, regulating the duties of such treasurers, directs them to assess the tax upon the nominal value of the

evidence of debt, and deduct it from the interest or dividend, and pay it over to the State Treasurer. Thus the law itself fixes the measure of valuation at the par value of the debt."

This was followed by D. L. & W. R. R. Co. *v.* Commonwealth, 16 P. F. Smith 69, where THOMPSON, C. J., following the previous cases, says : " The right of the financial officers of the corporation to retain the three-mill tax, under the Act of 1844, out of the interest payable to loan or bondholders of the company, under the Act of 30th April 1864, without an assessment by the County Commissioners or assessing officers, was maintained to be undoubted in Maltby *v.* The Reading and Columbia Railroad Co., 2 P. F. Smith 140, and re-asserted in The Commonwealth *v.* The Phœnix Iron Co., not yet reported ; the question is therefore settled."

The laws regulating the mode of payment, in regard to treasurers of the counties, cities, and boroughs, as extended to the financial officers of incorporated companies, under the Act of 1864, therefore embraces all the processes of assessment and collection.

The Act of 1864 was, however, repealed by the Act of May 1st 1868, which imposed a specific tax of " five per centum upon every dollar of interest paid," which percentage the financial officers were required to retain from creditors. The valuation is here implied from the terms of the Act, it is specific and determinate, and therefore enforceable. The Act of 1864 had the same effect upon loans of incorporate companies, which the Act of 1844 had upon municipal loans ; both were withdrawn from the ordinary processes of the revenue system. As there was no express provision to that end, however, it is not improbable that some confusion resulted in general practice, and therefore the Act of 1868 provided '' that the principal sums, from the interest of which the said tax is deducted, shall not be assessed and taxed for State purposes, in the valuation of personal property, or returned by County Commissioners to the Board of Revenue Commissioners." Thus, the difficulties which had then doubtless occurred under previous legislation, and which have arisen here, were averted.

But the Act of 1868, was repealed by the Act of 21st March 1873, which contained similar provisions ; this was in turn repealed by the Act of 24th April 1874, which repeal suspended that form of collection until the passage of Act of 1879. Neither the Act of 1868, or that of 1873, were ever brought before this court for construction upon the questions involved here, and they are therefore unimportant in this connection.

We are therefore of opinion that the court below was correct in its conclusions upon this branch of the case. Other

questions of the greatest magnitude and importance were raised in the presentation of this cause to the court below, but the view we have taken and expressed in this opinion renders it unnecessary that we should dispose of them.

The judgment is affirmed.