## Commonwealth *versus* Martin.
## Martin *versus* Commonwealth.

107  185
123  618
123  624
123  639
107  185
148  603

1. The title of the Act of June 7th, 1879 (P. L. 112), is "An Act to provide revenue by taxation."

2. In the original manuscript roll of said Act, on file in the office of the Secretary of the Commonwealth, the title stands as follows:

"An Act to provide revenue by taxation of corporations associations and limited partnerships."

*Held*, that the words enclosed within heavy lines form no part of the title of the Act;

*Held*, therefore, that the seventeenth section of the Act, which imposes taxation at the rate of four mills upon all public loans, including those owned by *individuals*, is within the scope of the title, and constitutional.

3. The accounting officers of the Commonwealth charged one M., who was sometime treasurer of the city of Philadelphia, with the amount of certain taxes upon municipal bonds of said city alleged to have accrued to the Commonwealth for the years 1880, 1881 and 1882, while said M. was City Treasurer, which taxes he neglected to deduct from interest paid by him to the holders of said bonds. Upon appeal from the settlement,—

*Held* by the court below and affirmed by the Supreme Court:

(1) Defendant is not liable for any tax in respect of the bonds held in the several sinking funds of the city of Philadelphia.

(2) Defendant is liable for tax in respect of the Bounty and Defence bonds issued under the Act of March 23d, 1864, because of the proviso in said Act limiting the exemption to ten years.

(3) Defendant is not liable for any tax in respect of the bonds known respectively as South Street Bridge bonds, and bonds owned by trustees of the Wills Hospital.

(4) Defendant is liable for interest on such taxes as he is chargeable for.

June 10th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

WRITS of error to the Court of Common Pleas of *Dauphin county :* Of May Term, 1884, Nos. 52 and 53.

These cases arose, in the court below, upon appeals by Joseph J. Martin, late Treasurer of the city of Philadelphia, from settlements of account by the Auditor General and State Treasurer, charging him with the sum of $415,523.30,

for taxes due the Commonwealth for the years 1880, 1881 and 1882, upon certain municipal bonds, issued and sold by the city of Philadelphia. It was claimed that it was his duty, as City Treasurer, to deduct said taxes from interest paid by him on said bonds, and to pay over the same to the State Treasurer.

The accounts embraced taxes upon several classes of bonds issued by said city, viz.:

1. Bonds held in the several sinking funds of the city of Philadelphia.

2. Bonds known as "South Street Bridge bonds."

3. Bonds known as "Wills Hospital bonds."

4. "Bounty and Defence bonds."

The account charged a tax of four mills on these bonds for the years 1880 and 1881, under the Act of June 7th, 1879, (P. L. 112) the seventeenth section of which provides, inter alia:

" . . . . . All public loans or stocks whatsoever, except those issued by this Commonwealth or the United States . . . . . shall be and are hereby made taxable for state purposes at the rate of four mills on every dollar of the value thereof annually."

And the account charged a like tax of four mills on said bonds for the year 1882, under the Act of June 10th, 1881 (P. L.), section 1, of which contains a clause identical with that of the Act of 1879, above quoted.

The duty of the City Treasurer to deduct said taxes from interest paid on said bonds was claimed to exist under the Act of April 30th, 1864 (P. L. 218), section 4 of which, after providing that the treasurer of each county and city shall make annual return to the Auditor General of the amount of bonds, &c., outstanding by said county or city on the first day of January in each year, provides, inter alia, as follows:

"And hereafter it shall be the duty of the treasurer of every county, city, borough and incorporated district in this Commonwealth to deduct the said state tax on payment of any interest or dividend on debts due by the county, city, borough, or incorporated district, and pay the same over to the State Treasurer within thirty days after the said interest or dividend has fallen due."

The specifications of objection filed to said accounts were, in substance, to the following effect:

1. The bonds were exempt from taxation. (*a*) The bonds held in the sinking funds of the city were not taxable, because although originally issued by the city they had been subsequently purchased by the city, and so stamped and identified as the property of said sinking funds as not to be

further negotiable; that said bonds do not represent "money owed by solvent debtors," nor "money capital in the hands of individual citizens of the state," and that there was not any interest paid on said bonds in said years, in any legal sense, within the meaning of said Acts of 1864, 1879 and 1881.

(*b*) That by the Act of March 23d, 1870 (P. L. 542), under which the South Street Bridge bonds were issued, it is expressly provided "that the said loan shall be exempt from all state and municipal taxation."

(*c*) As to the Wills Hospital bonds, the Act of April 11th, 1848 (P. L. 504), provides that the property held in trust for said hospital " is and shall be exempt from all State . . . . . tax or taxes."

(*d*) As to the Bounty and Defence bonds, the Act of March 25th, 1864, section 5 (P. L. 90), provides that the same "shall be exempt from taxation."

2. The foregoing bonds being exempt from taxation by the Acts authorizing their issue, any subsequent Act taxing them is unconstitutional.

3. The County Commissioners having made return, for the years in question, of all "bonds, mortgages, money owing by solvent debtors" and other property liable to and assessed for taxation, and the state revenue commissioners having adopted said returns, and the tax thereby levied having been paid, said bonds, if taxable, are presumed to have been included therein, and the tax paid.

4. Said bonds being taxable (if at all) not on their nominal value but upon their *actual* value, an assessment of such actual value was *essential* to the validity of the tax.

5. The true title of the Act of June 7th, 1879, as the same appears upon the original manuscript roll, on file in the office of the Secretary of State, is: "An Act to provide revenue by taxation of corporations associations and limited partnerships." The title to the Act of June 10th, 1881, is "A supplement" to the Act of 1879, referring to the latter by a wrong title. Said title of the Act of 1879 does not expressly include, but by implication excludes taxation of individuals, and all the bonds on which tax is claimed (other than those in sinking funds) are the property of individual holders, and therefore not taxable under said Acts.

The cases were, by agreement under the Act of 1874, tried without a jury, before SIMONTON, P. J., upon a statement of facts agreed on, setting forth the details of said bonds, &c.; and also upon oral testimony which was chiefly directed to explain certain facts in connection with the title of the Act of June 7th, 1879, hereinafter particularly referred to.

[Commonwealth *v.* Martin.]

The opinion of SIMONTON, P. J. was as follows :—

This is an appeal by defendant from the settlement of an account against him as Treasurer of the city of Philadelphia, by the Auditor General and State Treasurer, for state taxes claimed to be due for the tax years 1880, 1881 and 1882 on certain bonds theretofore issued and sold by said city. The Commonwealth claims that it was the duty of said treasurer, prescribed by the several Acts of Assembly hereinafter cited, to assess and retain said tax from the interest paid from time to time upon said bonds, and to pay it over to the State Treasurer for the use of the Commonwealth ; while the defendant contends that the bonds were not and are not taxable under said Acts, or any of them, and that, therefore, it was not his duty to retain any part of said interest, and that no tax is due the state in respect of said bonds. The case was, by agreement, tried by the court without a jury. It does not call for any formal finding of facts. The correctness of the amounts stated in the settlement is not disputed. The questions involved are purely questions of law.

There are specifications of objections in the appeal claiming exemption from taxation, by virtue of the several Acts of Assembly cited thereon, for a large portion of the bonds. Specifications identical with these, and as to the same bonds were filed in Commonwealth *v.* Delos P. Southworth (defendant's predecessor in office) No. 11, April Term, 1883, Dauphin County Common Pleas; and the questions of the right to the exemption were argued on the trial and disposed of, so far as this court is concerned, by the opinion filed and judgment rendered in that case, and the result of that decision will be applied in entering judgment in this case also.

The questions raised by others of the specifications herein were raised and argued in Commonwealth *v.* Lehigh Valley Railroad Company, and some of them were decided in the opinion by Judge McPHERSON, reported in 39 Leg. Int. 209; others were discussed, but not decided, because the case did not call for their decision.

That case was affirmed by the Supreme Court, upon the points decided below, CLARK, J., saying of those undecided : " Other questions of the greatest magnitude and importance were raised in the presentation of this cause to the court below, but the view we have taken and expressed in this opinion renders it unnecessary that we should dispose of them :" 13 W. N. C. 469; s. c., 8 Out. 89.

These references will enable those interested to follow the whole course of the discussion of these questions—a discussion much complicated by the want of care and comprehension evinced in the tax legislation with which it is concerned.

[Commonwealth v. Martin.]

The result in this case depends in a good degree upon the construction to be given to statutes not in question in the Lehigh Valley Railroad Company's case, and for this reason it becomes necessary to decide some of the questions then waived, as well as to determine the bearing of these statutes upon others there decided.

The first of these questions is raised by the averment of defendant that the true title of the Act of June 7th, 1879, is "An Act to provide revenue by taxation of corporations, associations and limited partnerships," and that so much of section 17 as relates to the taxation of bonds, mortgages and other property owned by individuals is unconstitutional and void, because its purpose is not clearly expressed in the title, as required by section 3 of Article III of the Constitution of 1874.

The title printed in the pamphlet laws is, "An Act to provide revenue by taxation," and they contain the usual printed certificate of the Secretary of the Commonwealth that he has "collated with and corrected by the original rolls on file in this office, the proof sheets of the printed copies of this edition of the laws, &c." See Act April 4th, 1792 (Smith's laws, vol. 3, p. 82.)

But the original roll was produced upon the trial, by the Deputy Secretary of the Commonwealth, for our inspection and information, and the title there appearing is "An Act to provide revenue by taxation of corporations, associations and limited partnerships."

The words of this title "of corporations associations and limited partnerships," are surrounded and enclosed by a heavy pen and ink line, * and we are asked by the Commonwealth to look into the journal of the two houses, and to find from their proceedings, as there recorded, that the words so surrounded and enclosed were stricken out prior to the final passage of the bill; that the line drawn around them indicates this; and, hence, that the true title is that given in the pamphlet laws.

Can we do this? Is the enrolled Act authenticated by the signatures of the Committee to Compare Bills, the presiding officers of the two Houses and the Governor of the Commonwealth, and on file in the office of the Secretary of the Commonwealth, its legal custodian, the ultimate and conclusive

---

* Thus: No. 463
An Act
To provide revenue by taxation

of corporations associations and
limited partnerships

proof of what itself contains, or can it be contradicted, explained or amended by the journals?

As will appear from an examination of the cases in which this question has been discussed, it has always been considered, and in the nature of the case it is, a question of evidence, and must be determined upon the principles which apply to that branch of the law.

One of these principles is that a record is to be tried by itself and imparts absolute verity. "A record or enrolment is a monument of so high a nature, and imparteth in itself such absolute verity, that if it be pleaded that there is no such record, it shall not receive any trial by witness, jury or otherwise, but only by itself:" 3 Black. Com. 331.

But an Act of the Legislature, enrolled in the proper office, is a record. It is said in the King *v.* Arundel, Hobart 110 (Boston Ed. 248), that an Act of Parliament is "a high record which must be tried by itself, *teste meipso.*"

And in Pangborn *v.* Young, 32 N. J. L. 29. BEASLEY, C. J., delivering the opinion of the court, says: "From the earliest times, so far as I have been able to ascertain, it has been the invariable course of legislative practice in this state for the speaker of each house to sign the bill as finally engrossed and passed. It is likewise certified by endorsement by the clerk of the house in which it originated." This we believe describes exactly the practice in Pennsylvania; and at this stage the bill is sent to the Governor for his assent or veto; a step which in former times was not required in New Jersey, but now is. The Chief Justice continues: "With these attestations of authenticity upon it, it is then filed in the office of the Secretary of State." . . . . . "There seems therefore to be no doubt whatever that these copies, thus authenticated and filed are to be regarded as enrolled bills, (Acts) corresponding in their general character, and partaking, if not in all, at least in most respects of the nature of parliamentary rolls."

So in Sherman *v.* Story, 30 Cal. 253, SAWYER, J. says, 258: "The enrolled Act, thus authenticated and deposited in the office of the Secretary of State, must be regarded as the record, and as a monument of as high a nature and solemn character as an Act of Parliament enrolled in chancery, or as a record in a court of justice."

On the other hand the journals of the houses are not records. Thus it is said in King *v.* Arundel, *ubi supra:* "Now journals are no records, but remembrances for forms of proceedings to the record; they are not of necessity, neither have they always been."

" The journal is of good use for the observation of the gen-

erality and materiality of proceedings and deliberations as to the three readings of any bill, the intercourse between the two houses and the like, but *when the Act is passed the journal is expired.*" . . . . . "But if the record of the Act itself carry its death wound in itself, then it is true that the parchment, no nor the great seal, either to the original Act, or to the exemplification of it, will not serve, as in the 4 H. VII., 18, where the Act was by the King, with the consent of the Lords, (omitting the Commons) and was judged therefore void. And he that observes the case 33 H. VIII., 17, which was the only case relied upon by defendant's counsel, shall find it so, and upon this rule the doubt to be conceived, *scil.* upon the parliament roll itself, not upon the journal."

The Constitution of 1874, article II. on the legislative section 12, requires each house to keep, and from time to time publish a journal; and the same section as well as sections 4 and 5 of article III. on legislation require the entry in the cases stated of the names of members voting for and against any measure upon the journal. There is no other requirement as to the contents of the journal; no mode provided for authenticating it, nor any place of deposit for safe keeping designated, nor is it made evidence by the Constitution or Laws for any purpose. As is said in Pangborn v. Young, *ubi supra*: "If intended as evidence for any purpose whatever in any course of judicial investigation, can any one conceive that these registers would have been left in the condition in which by the Constitution we find them? In the nature of things they must be constructed out of loose and hasty memoranda made in the pressure of business and amid distraction of a numerous assembly. There is required not a single guaranty to their accuracy or to their truth; no one need vouch for them, and it is not enjoined that they should be either approved, copied or recorded." We may add that we have not been able to learn with certainty whether they are ever preserved after being printed, and that it was the printed copies to which we were referred or which could be found.

The whole question is most thoroughly and ably discussed in the two cases of Shermen v. Story and Pangborn v. Young, above cited, and in State of Nevada v. Swift, 10 Nev. 176; wherein it is clearly shown that the decided weight of reason as well as of authority is on the side of the doctrine that the court cannot look behind the law itself as enrolled in the proper office and that it is a record which cannot be contradicted. These cases are well worthy of perusal.

The cases on this subject are so fully quoted and discussed in the first and last of those above cited that we do not consider it necessary to refer to them here; they are numerous

and found in nearly every state in the Union.  There are, it is true, some which hold a contrary doctrine, but most of these are influenced by the provisions of the modern constitutions on the subject of legislation, and hold doctrines which are opposed to those in our own recent case of Kilgore *v.* Magee, 4 Norris 412, and also to those of Speer *v.* Plank Road Company, 10 Harris 378, declaring that "when a bill has received the sanction of the Senate and House of Representatives, and the Executive's approval, it is a law ; and the highest evidence of its authenticity is the enrollment in the Secretary's office."

We may add that we have looked into the printed journals for information and are satisfied that even if they could be received and acted upon they would not enable us to arrive at a satisfactory conclusion.  They give no intelligible account of the passage of the Act, and indeed, we think it would be impossible to show from them that it was ever legally passed, in any form.

The thing which most clearly appears is that at all the stages of the progress of the bill in question, up to the time when it first passed both houses and was sent to the Governor, it contained its full title ; and it is manifest that if a bill can be passed with a title which does not denote its subject, and after its passage the title can be amended so as for the first time to express its purpose, the constitutional provision is of little value.

When this question first arose, it was contended that the Act, as printed in the pamphlet laws, was the best evidence, and could not be contradicted by the original roll.  We do not understand that this is now insisted upon, and it certainly cannot be the law, as is abundantly, though incidentally, shown in the cases cited.

We have then before us the original Act, with lines drawn around part of the title, as already stated.  Can we, looking only at the Act itself, as evidence of its contents, and remembering that the title is a part of the Act, give significance to these lines, and understand them to import that the words within them were stricken out?  We think the reasons given by Judge McPherson, in the Lehigh Valley Company's case, 39 Leg. Int. 210, are sufficient to show that this cannot be done.

Confining ourselves therefore, to the original bill, we find lines drawn around certain words in the title.  Is it possible that we can say of our own motion that because of the lines the words ought not to be there ?  They are not even erased ; they are simply enclosed, and the marks of themselves have no meaning, for they are not even ordinary marks of paren-

thesis.   We certainly will not say that they indicate a legis-
lative purpose to strike out the words, for they give no
evidence of such purpose, and even if they did it would be
most dangerous to hold that legislative marks themselves
could have that effect.   What is to prevent any person having
or obtaining access to the original statutes from drawing such
lines as these?   Original bills should be wholly free and clean
from marks, erasures and interlineations, and we will avoid one
danger at least by treating these marks as if they were not
there.   We can, at all events, lessen the temptation to make
them by refusing to give them any effect.

And it must not be forgotten that looking only at the en-
rolled Act, as we are bound to do, we cannot determine when
or by whom these lines were drawn upon it.

We cannot say that they were there before the bill left the
legislature or when it reached the Governor; nor can we know
that they were not placed there by some evil disposed person
for a sinister purpose.

Hence, if we were to permit them to speak for any purpose,
we might be giving significance to the unwarranted act of an
intermeddler or a forger, and forcing into a solemn Act of the
Legislature a meaning which none of those concerned in its
enactment ever intended or imagined.

It is no doubt for reasons such as these that it has always
been held, since the time when punctuation marks were first
introduced, that they have no legal place in a statute, and
when inserted by compiler or printer are to be ignored by the
courts as an aid to construction.   We find, therefore, on in-
spection of the roll, that the title to the Act is " An Act to pro-
vide revenue by taxation of corporations associations and
limited partnerships."

Is section seventeen, therefore, unconstitutional so far as it
purports to tax individuals?

Defendant contends that the Act violates the Constitution,
both negatively and positively; that it does not clearly ex-
press in its title that the taxation of individuals is its subject,
and that it excludes any inference that such is its purpose by
declaring affirmatively that the taxation of corporations,
associations and limited partnerships is its subject.

Dorsey's Appeal, 22 P. F. S. 192, is cited in support of this
proposition, and, we think, sustains it.   There the title to
the act was " An Act relating to the liens of mechanics, ma-
terial men and laborers upon leasehold estates, &c," and a
section of the Act, which extended the liens to freeholds, was
held to be unconstitutional, because freehold estates were not
within the title.   The court held that the title was restrictive,
and that while if " estates " simply had been made the sub-

11 OUTERBRIDGE.—13

ject of the Act, all kinds of estates, freehold as well as lease-hold, might have been included, yet, "leasehold estates" being designated, the idea of any intention to legislate as to "freeholds" was excluded.

So, here, the purpose to tax "corporations, associations and limited partnerships" being expressed, we think the Act cannot be extended further, and that so far as it purports to impose a tax upon bonds, mortgages, public loans or other property of individuals, it must be held unconstitutional and void. See, also, Union Passenger Railway's Appeal, 32 P. F. S. 91; Beckert *v.* City of Allegheny, 4 Nor. 191, and Ruth's Appeal, 10 W. N. C. 498.

As already stated, it was not necessary to decide this point in the Lehigh Valley Railroad Company's case, 8 Out. 89, because when it was there found that the tax claimed must be presumed to have been assessed and collected by the local assessors and collectors, the case was at an end.

It is claimed by the defendant that the same presumption arises in this case, but to this we cannot assent for the conclusive reason that, as we shall proceed to show, it was not any part of the duty of the local assessors and collectors to assess and collect the tax on municipal loans, and hence it cannot be presumed that they have done so.

The forty-second section of the Act of April 29th, 1844, enacts as follows: "It shall be the duty of the treasurer of each county, incorporated city, district and borough of this Commonwealth, on the payment of any dividend or interest to any holder or agent claiming the same, on any scrip, bond or certificate of indebtedness issued by said incorporated city, district and borough aforesaid, to assess the tax herein made and provided for State purposes upon the nominal value of each and every said evidence of debt; said tax to be deducted by the said treasurer on the payment of any interest or dividend aforesaid, and the same shall be held by him until paid over to the State Treasurer; and the same treasurer shall be subject to the same penalties and liabilities now provided by existing laws in relation to taxes on bank dividends."

This section of the Act of 1844 is not repealed by the Act of June 7th, 1879; and even if section 17, which fixes the rate of four mills, were valid, the tax would still be collectible in the manner provided by section 42. The only effect of section 17 would be to change the rate from three mills, as fixed by section 34 of the Act of 1844, to four mills. But if section 17 falls because unconstitutional, both the rate of three mills and the mode of assessment and collection prescribed in the Act of 1844 remain in force.

Defendant contends, however, that even if this would

otherwise be the case, it is not so for the reason that section 42, Act of 1844 was superseded by the Act of April 2d, 1846 (P. L. 486), entitled "An Act to provide for the reduction of the public debt."

We are asked to imply this repeal because, as it is argued, municipal bonds are included in the description "all public loans and stocks whatever" which by the Act of 1846 are to be assessed and taxed by the local assessors and county officers, and, therefore, the mode of assessment and taxation provided for them in section 42, Act of 1844, being inconsistent with the latter mode provided, is abrogated and repealed. We do not think the validity of the Act of 1844 can now be questioned.

The taxes upon municipal bonds have been collected under it from the date of its passage until now, and its existence has repeatedly been recognized by the courts since the passage of the Act of 1846.

Thus in Maltby v. Reading and Columbia Railroad Company, 2 P. F. S. 148; Commonwealth v. Phœnix Iron Company, decided in the Supreme Court but not reported; and Delaware, Lackawanna and Western Railroad Company v. Commonwealth, 16 P. F. S. 69; the validity of section 3, Act of April 30th, 1864, (P. L. 218) was upheld upon the ground that section 42, Act of 1844, was then in force, and that its provisions were by said section 3 extended to the financial officers of corporations.

And its continued existence is recognized by the Supreme Court in the Lehigh Valley Railroad Company case, 8 Out. 89, and the principle upon which the general expressions, which are said by defendant to work a repeal, are to be construed is stated by CLARK, J., as follows: "Thus it will be seen that the forty-second section of the Act of 1844 makes particular provision for the assessment and collection of State taxes on municipal indebtedness, and, therefore, contains within itself abundant machinery for its own enforcement."

"A special method of assessment being thus prescribed, the subjects embraced in it are of course withdrawn from the ordinary methods pursued under that Act, and the regular general assessment could not be presumed to contain what did not legitimately fall within its range. . . . . . In such case a return of 'all mortgages, moneys owing by solvent debtors, &c.,' would be construed to cover such mortgages, &c., only as come within the range of the assessor's duty."

But if the legislature did not consider the general language used in section thirty-four of the Act of 1844, providing for the assessment and collection of the tax upon "all public loans and stocks whatever," by the local assessors and col-

[Commonwealth *v.* Martin.]

lectors, inconsistent with the special method provided in section forty-two for the assessment and collection of the tax upon municipal loans, how can we decide that the same general language in the Act of 1846 is any more inconsistent therewith? And especially in view of the fact that the Act of 1846 itself, notwithstanding the general language which is broad enough to cover the whole subject, provides·in section eight the same special mode for assessing and collecting loans. guaranteed by the State, as is provided by section forty-two of Act of 1844 for municipal loans.

We therefore think that the whole tenor of these two Acts shows that the special mode of assessment and collection of the tax on municipal loans, provided in section forty-two, Act of 1844, remains in force and unrepealed.

And as these loans have been taxable, and actually taxed in this special manner ever since the passage of the Act of 1844, we may conclusively presume that they have not been returned for state taxation by their owners, nor assessed or taxed in any other manner, even if they be subject to taxation in the ordinary mode, for county purposes.

Hence, we conclude that the taxes claimed in this case for the tax years 1880 and 1881 are to be assessed at the rate and collected in the manner prescribed by the Act of 1844, precisely as if the Act of 1879 had never been passed.

And since, as has been decided in the Lehigh Valley Railroad Company's case, *supra,* the Act of 1881 does not provide a mode of assessment or collection, but merely changes the rate from three mills to four, the tax for 1882 must be assessed and collected in the same manner, but at the latter rate.

In coming to this conclusion, we necessarily overrule the objection of defendant that the Act of 1881 is unconstitutional, because it is entitled a " Supplement to an Act to provide revenue by taxation," when this, as we have found, is not the title of the Act to which it was intended to be a supplément. In Allegheny county Home's Appeal, 27 P. F. S. 77, quoted in State Line and Juniata Railroad Company's Appeal, Id. 429, it was held that " if the title fairly gives notice of the subject of the Act so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary." And in the latter case it is said that " the true rule is that where the legislation in the supplement is germane to the subject of the original bill, the object of such supplement is sufficiently expressed in the title."

The legislation in this supplement is certainly germane to the subject legislated upon in the original bill, and the title expressed in the supplement would fairly give notice that taxation in general was its subject. Hence, to say the least,

there is a doubt which must be resolved in favor of the constitutionality of the Act.

But it is further objected by defendant that the assessment of the tax upon the nominal value of municipal bonds, while other like subjects of taxation are to be assessed at their actual value is forbidden by the first section of the ninth article of the Constitution, which requires that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

We do not think there is force enough in this objection to destroy the validity of the tax. The statute had required the assessment of municipal bonds at their nominal or par value, and the collection of the tax due upon them by the treasurers of the several municipalities by retaining it out of the interest accrued for more than twenty years before the Constitution of 1874 was adopted, and if our construction of the effect of the Acts of 1879 and 1881 is correct, no other mode of assessment and collection has since been provided by the legislature.

If this be so, the case is brought directly within the scope of the principles clearly and forcibly enunciated by Chief Justice AGNEW, in Lehigh Iron Company v. Lower Macungie Township, 31 P. F. S. 482, which led to the conclusion as stated by him, "that section 1 of article IX. is not immediately operative, but was intended by the convention to be mandatory upon the legislature to enact laws framed upon its special intent, and to repeal all laws inconsistent therewith, leaving the legislature in the exercise of a sound and wise discretion to time the repeal after proper general laws have been passed. Any other interpretation would lead to most ruinous results."

And as no intention to repeal the Act of 1844 has been expressed by the legislature since the adoption of the Constitution of 1874, we cannot infer it from the simple fact that the tax rate is changed by the Act of 1881 from three mills on the dollar to four.

Moreover, in view of the fact that municipal bonds have for so many years been assessed and taxed in this special manner, it might not be going too far to hold that they form a " class of subjects" within the fair intent of this article and section, and that all the Constitution requires is that the tax upon them be uniform. But, be this as it may, we think the objection of defendant for want of uniformity cannot be sustained.

We do not deem it needful to lengthen this opinion by discussing in detail the numerous other specifications of objections filed by defendant. We have not overlooked any of

them, and they must be considered overruled, in so far as they are inconsistent with our conclusions of law upon the whole case, which are as follows :

First. Defendant is not liable for any tax in respect of the bonds held in the several sinking funds of said city of Philadelphia.

Second. Defendant is liable for tax in respect of the bounty and defence bonds issued under authority of the Act of March 23d, 1864, because of the proviso in section 7 limiting the exemption to ten years : See 11, April Term, 1883, Dauphin county C. P.

Third. Defendant is not liable for any tax in respect of the bonds known as South street bridge bonds.

Fourth. Defendant is not liable for any tax in respect of the bonds owned by the trustees of the Wills Hospital for the Indigent Lame and Blind.

Fifth. The title of the Act of June 7th, 1879, is " An Act to provide revenue by taxation of corporations associations and limited partnerships."

Sixth. So much of the 17th section of said Act as imposes a tax upon individuals is unconstitutional and void.

Seventh. Defendant is liable for the tax during the tax years 1880 and 1881, upon so many of the bonds taxed in the settlement in this case as are not hereinabove held to be exempt, at the rate of three mills upon every dollar of the nominal or par value of said bonds.

Eighth. Defendant is liable for the tax during the tax year 1882 upon so many of said bonds as are not exempt as above stated, at the rate of four mills upon every dollar of the nominal or par value of said bonds.

Ninth. Defendant is liable to interest upon the amount due in each of said years from three months after the date of the settlements of the accounts respectively at the rate of six per centum per annum.

Tenth. The amount due to the Commonwealth from defendant is as follows :

Tax for 1880 and 1881, . . . . . $51,149 10
Interest from February 23d, 1883, to May 20th, 1884. 3,810 10
Tax for 1882, . . . . . . . 32,114 40
Interest from October 26th, 1883, to May 20th, 1884. 1,106 99
Attorney-General's commission, 5 per cent. on
$83,263.50, . . . . . . . . 4,163 17

Total, . . . . . . . . $92,343 76

For which amount let judgment be entered if exceptions be not filed according to law.

[Commonwealth v. Martin.]

Both parties filed exceptions to the decision of the court.

The Commonwealth excepted to the third, fifth, sixth and seventh conclusions of law.

The defendant filed, inter alia, the following exceptions:

2. The court erred in not finding as a fact that for the year 1880 the commissioners of every county in the Commonwealth, including Philadelphia, returned to the State Board of Revenue Commissioners, under oath, as required by law, a tabular statement showing by wards, boroughs and townships, the amount at which all the personal property and other matters and things taxable by the laws of this Commonwealth were valued and assessed, the said return including in each instance the "value of all mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment, also all articles of agreement and accounts bearing interest, owned or possessed by any person or persons whatsoever (except notes or bills for work or labor done, and all obligations given to banks for money loaned and bank notes), and all public loans or stock whatsoever, except those issued by this state or the United States, and all moneys loaned or invested on interest in any other state, and all other moneyed capital in the hands of individual citizens of the state."

3. The court erred in not finding as a fact that the revenue commissioners adopted the returns made to them by the commissioners of the several counties, including Philadelphia, and on the 20th day of October, 1880, the duplicate record of the valuation of the several counties in the Commonwealth of Pennsylvania, including the "value of all mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment, also all articles of agreement and accounts bearing interest, owned or possessed by any person or persons whatsoever (except notes or bills for work or labor done, and all obligations given to banks for money loaned and bank notes), and all public loans or stocks whatsoever, except those issued by this state or the United States, and all moneys loaned or invested on interest in any other state, and all other moneyed capital in the hands of individual citizens of the state;" and transmitted a record of such valuation to each county, the said valuation remaining unchanged for the years 1880, 1881, and 1882.

4. The court erred in not finding as a fact that the tax assessed upon said valuation and record so made by the revenue commissioners for the years 1880, 1881 and 1882 has been paid in full to the Commonwealth.

5. The court erred in not finding as a conclusion of law, based upon the facts referred to in the foregoing exceptions,

that the said assessment and taxation includes, or must be presumed to include, the loans of the city of Philadelphia, and that the Commonwealth is not entitled to recover a second time a tax which it has already once collected.

7. The court erred in overruling the twelfth specification contained in defendant's appeal, as follows:

" Twelfth. If the bonds upon which tax is now claimed were not included in the assessment and taxation mentioned in the preceding specification, then the said bonds have not been, neither the city of Philadelphia nor the treasurer thereof could lawfully have deducted any sum whatever when paying interest upon said bonds. And neither the said city nor the treasurer thereof can now be held responsible for failure to collect tax upon property which had not been lawfully assessed."

8. The court erred in overruling the thirteenth specification contained in defendant's appeal, as follows:

" Thirteenth. The Act of June 10th, 1881, makes the tax chargeable, if at all, upon the actual and not upon the nominal value of the bonds. The bonds of the city of Philadel·phia upon which the tax in dispute is charged, bear different rates of interest and differ in market and in actual value. Neither the city of Philadelphia nor the treasurer thereof was authorized by law to make any valuation or assessment by any properly constituted authority."

9. The court erred in overruling the fourteenth specification contained in the defendant's appeal, as follows:

" Fourteenth. If any Act of Assembly required that the city of Philadelphia or the treasurer thereof should, when paying interest to holders of bonds of the city, retain from them a so-called tax upon bonds which had not been assessed by lawful authority, or makes the said city or the treasurer thereof liable unto the Commonwealth for failure to collect the so-called tax, then the said Act is unconstitutional and void, because in conflict with Article V. of the amendments to the Constitution of the United States, which provides that " no person shall be . . . . . deprived of life, liberty nor property, without due process of law ;" and also because in conflict with Article XIV. of the amendments to the Constitution of the United States.

10. The court erred in overruling the fifteenth specification contained in defendant's appeal, as follows:

" Fifteenth. The said Act of Assembly is void, also, because in conflict with Section 9 of Article I. of the Constitution of Pennsylvania, which provides that no person shall be ' deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.' "

[Commonwealth v. Martin.]

11. The court erred in overruling the sixteenth specification contained in defendant's appeal, as follows:

" Sixteenth. The said Act of Assembly is void, also, because in conflict with Section 10 of Article I. of the Constitution of Pennsylvania, which provides that private property shall not be taken for public use without authority of law."

12. The court erred in overruling the seventeenth specification contained in defendant's appeal, as follows:

" Seventeenth. The Act of June 10th, 1881, so far as it relates to the taxation of the bonds of the city of Philadelphia, or requires the said city or the treasurer thereof to deduct any tax when paying interest thereon, is incomplete, inoperative, unconstitutional and void, the said Act failing to provide any mode for the assessment of said bonds or for ascertaining their value or the amount of tax to be deducted from the interest paid."

13. The court erred in overruling the eighteenth specification contained in defendant's appeal, as follows:

" Eighteenth. If the Act of June 10th, 1881, does not require an assessment of the bonds, but imposes the tax upon the nominal, regardless of the real value, then the said Act is in conflict with Section 1 of Article IX of the Constitution of Pennsylvania, which requires that ' all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority of levying the same.' "

14. The court erred in overruling the nineteenth specification contained in defendant's appeal, as follows:

" Nineteenth. If any Act of Assembly requires that cities or the officers of cities shall assess a tax upon bonds or other evidences of indebtedness at their nominal value, or makes any discrimination between the assessment and taxation of bonds issued by cities and bonds issued by individuals or private corporations, then the said Act is void, because in conflict with Section 1 of Article IX. of the Constitution of Pennsylvania, which requires that ' all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.' "

15. The court erred in overruling the twentieth specification contained in defendant's appeal, as follows:

" Twentieth. The title of the Act of June 7th, 1879, is ' An Act to provide revenue by taxation of corporations, associations and limited partnerships.' In the title of the supplementary Act of June 10th, 1881, the original Act of 1879 is referred to by a wrong title, and no new purpose or subjects of taxation are expressed. So much of the Act of June 10th, 1881, as relates to the taxation of bonds, mortgages, and other

[Commonwealth *v.* Martin.]

personal property in the hands of individuals, is unconstitutional and void, the purpose thereof not being clearly expressed in the .title as required by Section 3, Article III. of the Constitution of Pennsylvania."

16. The court erred in its second conclusion of law, as follows:

" Second. Defendant is liable for tax in respect of the bounty and defence bonds issued under the authority of the Act of March 25th, 1864, because of the proviso in section 7, limiting the exemption to ten years.    See 11, April Term, 1883, Dauphin C. P."

17. The court erred in° its seventh conclusion of law, as follows:

"Seventh. Defendant is liable for the tax during the tax years 1880 and 1881, upon so many of the bonds taxed in the settlement in this case as are not hereinabove held to be exempt, at the rate of three mills upon every dollar of the nominal or par value of said bonds."

The court entered decrees overruling the exceptions on both sides.   SIMONTON, P. J., filed the following opinion in the case of Commonwealth *v.* Martin :

" The evidence offered to prove the matter stated in the second, third and fourth exceptions, while it proved that the presumption of law was that the officers and boards therein mentioned did their duty and made return of all the mortgages, &c., which it was their duty to return, and collected all the moneys which it was their duty to collect, did not prove that they valued, assessed, returned or accepted a return of the bonds in question in this case, or collected the tax on them, for the reason that it was not their duty so to do ; hence the matters alleged are irrelevant in this case, and were not found as facts, because irrelevant.

" The other exceptions call for no special remarks.

" All the exceptions of the Commonwealth and of defendant are overruled, and judgment is directed to be entered in accordance with the opinion heretofore filed."

Judgment having been entered accordingly, both parties took writs of error, assigning for error, respectively, the overruling of their respective exceptions as above, and the judgment.

*Lewis C. Cassidy,* Attorney-General, and *Robert Snodgrass,* Deputy Attorney-General, for the Commonwealth.—The court below held that the South Street Bridge bonds were exempt under the Act of March 23d, 1870, and that said Act was not repealed by the Act of April 9th, 1873, because so to construe the latter Act would be to impair the obligation of a contract

with the state. But we submit that the exemption granted by the Act of 1870 was a mere privilege without consideration; a "gratuity spontaneously made, which might be kept, changed or recalled at pleasure:" Tucker v. Ferguson, 22 Wall 527; Cooley on Con. Lim. *383, *280 and *281; Christ Church v. Philadelphia, 24 Howard 300; East Saginaw Salt Co. v. East Saginaw, 13 Wall 373; People v. Roper, 35 N. Y. 629; Johnson v. Crow, 6 Norris 184; Borough of McKeesport v. Owens, 6 W. N. C. 492; Welch v. Cook, 7 Otto 541. . . . . . As to the title of the Act of June 7th, 1879. The court should have rejected those words of the title of the original manuscript roll which were enclosed within the pen and ink lines. The inspection of the original roll raised a doubt as to the correct title, which doubt was solved by evidence of the proceedings of the House of Representatives and oral testimony showing that those lines indicated an amendment of the original title, striking out those words. The Secretary of the Commonwealth officially certified and published in the Pamphlet Laws the title without the disputed words. The court erred in holding that they were wrongly rejected, and by retaining them, rendered invalid the seventeenth section of the Act imposing a tax on individuals. If, however, there has been error in the ruling upon this point, the seventeenth section will stand as a legitimate part of the Act of 1879, and in that event the rate of taxation will be four instead of three mills for the years 1880 and 1881.

*M. E. Olmsted* and *Lyman D. Gilbert* (with them *Weiss* and *Chas. F. Warwick*, City Solicitor of Philadelphia), for Joseph J. Martin.—The enrolled Act authenticated by the signatures of the committee to compare bills, the presiding officers of the two houses, and the Governor of the Commonwealth, and on file in the office of the Secretary of the Commonwealth, its legal custodian, is the ultimate and conclusive proof of what itself contains, and cannot be contradicted, explained or amended by the journals, or by any extrinsic proof whatever: Speer v. Plank Road Co., 10 Harris 378; Bank of Pennsylvania v. Commonwealth, 7 Harris 144; Kilgore v. Magee, 4 Norris 401–412; In re Welman, 20 Vt. 653; Commonwealth v. Lehigh Valley R. R. Co., 39 Leg. Int. 210.

[Elaborate and lengthy arguments were presented on both sides.]

Mr. Justice GORDON delivered the opinion of the court, October 6th, 1884.

We have before us for our disposition two writs of error from the same judgment of the court below, one taken by

[Commonwealth *v.* Martin.]

the plaintiff and the other by the defendant, and as they involve the same subject matter, they will be considered together. The case, as it appeared in the Common Pleas, was an appeal from the settlement of an account against the defendant, as treasurer of the city of Philadelphia, by the Auditor General and the State Treasurer, for taxes claimed to be due for the years 1880–'81 and '82, on certain bonds theretofore issued and sold by the said city. The rulings of the court below, except those embraced by the fifth and sixth assignments on part of the Commonwealth, are unexceptionable, and, as it would be to no purpose for us to go over what has been so ably disposed of by the learned judge of that court, we dismiss, without further comment, all the exceptions on either side, except as above stated.

But we cannot assent to the proposition that so much of the Act of the 17th of June, 1879, as imposes a tax upon individuals, is unconstitutional and void. The learned judge so held because he was of opinion that the intention to tax individuals was not clearly expressed in the title to the said Act. It is not doubtful but that the title as found in the pamphlet laws: "An Act to provide revenue by taxation," is sufficient to sustain the rejected part of the 17th section. On production, however, of the original bill or draft of the Act, as found on file in the office of the Secretary of the Commonwealth, the title was found to be, "An Act to provide revenue by taxation *of corporations, associations and limited partnerships;*" but around that part of it which we have italicised were drawn heavy, black ink lines, thus severing it from the words preceding. The court held that these lines were to be disregarded, and that the title to the Act must be read as though they were not there. If the correctness of this construction be admitted, the conclusion arrived at cannot be gainsaid; for a title expressing an intention to tax corporations, associations and partnerships only, necessarily excludes natural persons, hence, so much of the Act as provides for the taxation of the property of such persons, would clearly, under this construction, be avoided by the constitutional provision. We cannot, however, assent to the reasoning by which a conclusion of this kind was reached. These marks are part of the original bill as found upon the files in the Secretary's office, and at most imply only an irregularity; that is, that the bill was not transcribed as it ought to have been before it was sent to the Governor for his signature. It is true, as the court suggests, some unauthorized person might have thus mutilated the bill after it was signed, but of this there is no evidence, and, in the absence thereof, we are not warranted in presuming a forgery. Other than this want

of transcription, there is neither irregularity nor mark of suspicion about this document. To those acquainted with legislative rules, the marks above mentioned would indicate an amendment properly made in either the House or Senate, and so, had the bill been transcribed, would the transcribing clerk have interpreted them, as did the compiler of the pamphlet laws.

The eleventh joint rule requires that such an amendment, as that under discussion, be marked by brackets with a note of the legislative branch in which it is made, so that in the case in hand, there is but an irregularity in the neglect to comply with a direction which, whilst it conduces to orderly legislation, is, in itself, of no material importance. Without evidence to the contrary, then, we must take it that these marks were made in the regular course of legislation, and that they indicate an amendment made, by striking out the words embraced within them, during the passage of the bill.

As to what remains, we agree with the court below, that it was no part of the duty of the local assessors and collectors to assess and collect the tax on municipal loans, but that this duty was, by the 42d section of the Act of April 29th, 1844, imposed upon the treasurers of the several counties and other municipalities of the Commonwealth. This section of the Act is not repealed by the Act of 1879; no provision is therein made for the collection of the tax thereby imposed upon the securities in question, and we must resort to the former Act for the means necessary to carry the latter into effect.

Even were we to hesitate as to a construction of this kind, our doubts must be resolved in its favor by the analogous case of The Delaware, Lackawanna and Western Railroad Co. *v.* The Commonwealth, 16 P. F. S. 69, and by the well considered remarks of our brother, Mr. Justice CLARK, in the case of The Commonwealth *v.* The Lehigh Valley Railroad Co., 8 Out. 89.

Impelled by these views, we are constrained to reverse the case as brought up on the writ of the Commonwealth, and we direct judgment to be entered for the said Commonwealth, to be liquidated by the prothonotary of the court below on the basis of a four mill tax, with interest, costs and attorney's commissions.

The case of Joseph J. Martin is affirmed.