IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT, HARRISBURG, 1888.

## COMMONWEALTH v. DELAWARE DIV. CANAL CO.

ERROR TO THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued January 8, 1889—Decided February 4, 1889.

1. The power to impose taxes for the support of the government, with the power of classification, still belonging to the legislature under the new constitution, the selection of the subjects thereof, their classification, and the methods of collection to be provided, are matters purely legislative.
2. The power to classify being given, all that is then required by the constitution. is that the taxes shall be uniform upon the members of a class, and it is the uniformity of taxation according to the classification made, which is a question to be determined by the courts.
3. Absolute equality is unattainable, and a mere diversity in the methods of assessment and collection violates no rule of constitutional right, if when they are applied there is substantial uniformity in the results.
4. By § 4, act of June 30, 1885, P. L. 193, corporate obligations are taken out of the general designation of subjects contained in § 1, and as a distinct class are made subject to a different standard of valuation, and the tax to a different method of collection.
5. The provisions of said § 4, requiring the treasurers of corporations to assess a three mills tax upon the nominal value of corporate loans, to deduct the same from the interest paid thereon, and to return it into the state treasury, does not violate § 1, article IX. of the constitution.

594

Statement of Facts.

6. A corporation has a legal standing to contest the validity of a settlement made by the auditor general and state treasurer under said section, as well as the constitutionality of the power under which it is made.

7. Commonwealth v. Lehigh V. R. Co., 104 Pa. 89, distinguished ; Maltby v. Reading etc. R. Co., 52 Pa. 140 ; Delaware etc. R. Co. v. Commonwealth, 66 Pa. 66 ; Susquehanna Canal Co. v. Commonwealth, 72 Pa. 72; Buffalo etc. R. Co. v. Commonwealth, 3 Brewst. 374 ; Commonwealth v. Martin, 107 Pa. 185, approved.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 28 May Term 1888, Sup. Ct.; court below, No. 170 September Term 1887, C. P.

On May 20, 1887, the auditor general and state treasurer of Pennsylvania, upon a return made under protest by The Delaware Division Canal Company, a corporation organized under the laws of Pennsylvania, made the following settlement of account for taxes :

DELAWARE DIVISION CANAL COMPANY,
In account with the COMMONWEALTH OF PENNSYLVANIA, Dr.

For tax on scrip, bonds, and certificates of indebtedness, per section four of the act of June 30, 1885, for the year ending first Monday of November, 1886, as per report herewith filed :

Nominal value of scrip, bonds, and certificates of indebtedness, owned by residents of Pennsylvania, . . $700,000

| | | |
|---|---|---|
| Tax, three mills, . . . | $2,100 00 | |
| Deduct treasurer's commission, | 60 50 | |
| Due commonwealth, . . | $2,039 50 | |

On July 14, 1887, the company thus charged appealed from said settlement, specifying objections thereto which in substance were as follows :

1. Section 4, act of June 30, 1885, does not impose any duties or liabilities upon corporations in respect of any tax on bonds or mortgages issued by them, but applies only to persons who act in the capacity of treasurers of corporations.

2. If said section, or any section of said act, does apply

to corporations, the act nevertheless does not impose a tax upon them in respect of their indebtedness, but requires or authorizes them to act as collectors, by retaining the tax from their creditors when paying interest upon taxable bonds or mortgages.

3. An arbitrary valuation at par is not a valid assessment as the foundation of an ad valorem tax.

4. Taxation upon such an assessment, without notice to the owner of the property taxed and the right of appeal from the valuation, amounts to a taking without "due process of law."

5. By reason of the discriminative methods of assessing different subjects of the same class, and of the fact that in taxing corporate loans at par some are taxed at very much above and others at very much below their actual values, some paying as high as six and others as low as two mills upon their actual value, the resulting taxes are not uniform as required by § 1 of article IX. of the constitution of the state, and,

6. The act being in violation of both the federal and state constitutions, no tax was lawfully due and none could lawfully have been deducted by it from the interest due to its creditors by the terms of its contract with them.

The cause was submitted to the decision of the court, without trial by jury, under the act of April 22, 1874, P. L. 109, and after the hearing which began on December 19, 1887, was concluded, the court, SIMONTON, P. J., filed the following decision :

This case was tried by the court, as provided by the act of April 22, 1874.

It originated in an account settled May 20, 1887, by the auditor general and state treasurer against defendant "for tax on scrip, bonds and certificates of indebtedness," from which settlement defendant entered an appeal to this court, as authorized by the act of 1811 relative to public accounts.

We find from the evidence the following facts :

1. The Delaware Division Canal Company, defendant, is a corporation of the state of Pennsylvania, chartered in 1858, and having authority to borrow money, issue bonds and secure the same by mortgage.

2. In pursuance of this authority, defendant has issued

bonds secured by mortgage to the amount of $800,000, all of which were outstanding during the year ending with the first Monday of November, 1886, and were held as follows:

By non-residents of Pennsylvania, . . . . . . . . . $100,000
By residents of Pennsylvania, . . . . . . . . . . . . 285,000
By the Lehigh Coal & Navigation Company, a corporation of the state of Pennsylvania, . . . . . . . . 306,000
By other corporations of the state of Pennsylvania, 109,000.

3. No interest was paid upon the $306,000 of bonds held by the Lehigh Coal & Navigation Company, nor was any due or payable. By the terms of an agreement of lease between the two companies, these bonds are not to bear interest until the termination of the lease. Upon the remaining $494,000 of bonds interest was paid upon the first days of January and July, but the company, denying the validity of the fourth section of the act of 1885, did not deduct and pay into the state treasury the state tax of three mills as required by said section.

4. The nominal or par value of bonds and mortgages issued by corporations is no certain measure of their actual value, which is often either above or below their par value; the actual value being dependent upon the value of the property mortgaged, the rate of interest, the date of maturity, and other conditions; some bonds upon which interest is regularly paid selling as low as fifty cents on the dollar, and others as high as one hundred and fifty. The actual and par value of mortgages issued by individuals agree more nearly than those of mortgages issued by corporations.

5. There are owned by residents of Pennsylvania large amounts of bonds and mortgages issued by foreign corporations not doing business in this state, and not subject to the provisions of the fourth section of the act of June 30, 1885, but taxable at their actual value under the first section, the actual value of some of which bonds is much above and others much below their nominal or par value.

6. The settlement appealed from is, as stated therein, based upon § 4 of the act of June 30, 1885, P. L. 193. Tax is charged therein upon all the bonds of the company defendant except the $100,000 thereof held by non-residents of the state.

We think a brief history of prior legislation, similar to that

now before us, and of judicial decision thereon, will aid us to understand and determine the questions involved in this case.

The act of June 30, 1885, on which the settlement of account and claim for taxes in this case is based, is a second supplement of the act of June 7, 1879, P. L. 112, entitled "An act to provide revenue by taxation," the first supplement being the act of June 10, 1881, P. L. 99. The taxing sections of these three acts are substantially identical, and are in effect the same as the taxing section of the act of April 29, 1844, P. L. 501. They all tax among other things "mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment;" the acts of 1844 and 1885, at the rate of three mills on every dollar of the value thereof, and the acts of 1879 and 1881 at four mills.

Under the act of 1844, and other tax laws in force, the tax on the mortgages and evidences of indebtedness of railroads and other private corporations, which we shall hereafter in this opinion style corporate loans, was levied, assessed and collected by the same officers, process and machinery as other state and county rates and levies. The several assessors were required to value them as all other objects of taxation, "according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell:" Act of May 15, 1841, P. L. 393.

An attempt was made, by the act of 1879, to change the mode of levying the tax on corporate loans. After exempting them from taxation, except for state purposes, it enacted that "all corporations paying interest on loans hereby taxed for state purposes only, shall deduct the said tax from the said interest and pay the same into the state treasury." To this provision was added, in § 2 of the act of 1881, a clause requiring the corporations to report annually in the month of November, the amount of indebtedness upon which they had paid interest.

Accounts having been settled against numerous corporations, under these acts, for tax on corporate loans for the years 1880 and 1881, appeals were taken by the corporations to this court, when it was contended on their behalf that, as there were no means of assessment provided by the acts, it was still the duty of the local assessors, in making the assessment for the years

in question, to value and assess corporate loans with the other subjects of taxation in the hands of their owners; that in discharge of this duty the assessors, acting as officers of the commonwealth, had made such assessments and had made due and proper returns thereof, which had been accepted and acted upon by the revenue officers of the state, and, therefore, it must be assumed that they had performed their full duty in the premises, and that their returns were full and true, not only as to all classes of subjects but also all objects taxable in said classes, including these loans, and that, therefore, the tax upon them must be presumed to have been collected by the ordinary mode of collecting state and county taxes.

This court found the facts to be as claimed, and decided that the necessary conclusion of law was that the tax had been paid and therefore entered judgment for defendants; and, on writ of error to the Supreme Court, this judgment was affirmed: Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89, decided October 2, 1883.

Thereupon, at the next session of the legislature, the act of June 30, 1885, was passed, as a further supplement to the act of 1879. In it no change is made in the subjects of taxation, but the rate is changed from four mills to "three mills on the dollar of the value" of the taxable subjects annually; and in § 4 it is made the duty of the treasurer of each private corporation, on the payment of interest on its indebtedness to residents of the state, "to assess the tax imposed and provided for state purposes upon the nominal value of each and every said evidence of debt," while § 6 provides that corporate loans and indebtedness shall not be returned to nor assessed by the local assessor.

Accounts having been settled against numerous corporations under § 4, of this act, appeals have been taken; and one of these is now before us.

It is obvious that the defence set up in the case above referred to cannot be interposed in this, for, as we have seen, § 6 of the act, withdraws corporate loans from the jurisdiction of the local assessors, and therefore there can be no presumption that they have been assessed in any other mode than that prescribed by § 4 of the act of 1885.

But the defendants contend that the settlement, now in question, is illegal and invalid because, among other reasons, § 4 is repugnant to the clause of the constitution of 1874, which ordains that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." The argument is that the taxing section of the acts subjects all the taxable subjects therein designated, including corporate loans, to a tax of three mills on the dollar of their value; that all the other subjects are valued and taxed according to such value by the local assessors, while corporate loans are, without being valued and assessed, taxed at their nominal value; and it is averred and we have found, as one of the facts in the case, that their nominal value is not a certain measure of their actual value, which is often much greater, and often much less; so that, in many instances, the tax is much more, and in many others, much less, than it would be if imposed upon the actual value of each several taxable subject.

To appreciate correctly the force of this argument, we must understand clearly the nature of the tax in question. This we can readily do from the decision in the case referred to above. It is there demonstrated that it is a tax on property, and that when this property is made taxable at three mills on the dollar of its value, its actual cash value is intended. But if it is a tax on property it cannot be levied without an assessment. And if the property is taxable at a given rate upon its actual cash value, the assessment must include a valuation.

A valuation "is a necessary part of every assessment of taxes which is governed by a ratio or percentage. There can be no rate or percentage without a valuation:" Mr. Justice MILLER, in People v. Weaver, 100 U. S. 539. " Of the necessity of an assessment no question can be made. Taxes by valuation cannot be apportioned without it. Moreover it is the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follows it; without an assessment they have no support, and are nullities:" Cooley, Const. Lim., 259. " The tax of a citizen is the result of the rate applied to the value of the property which he owns, and he is not taxed until the rate is thus applied by some legal

mode of adjustment; no duty of payment arises, no proceeding to collect can be sustained, until the tax is thus created:" Commonwealth v. Lehigh V. R. Co., 104 Pa. 101, per CLARK, J. It was no doubt the judgment in this case which led to the insertion in the act of 1885, which as we have seen is a supplement to the act of 1879, then before the court, of the provision in § 4, making it the duty of the treasurer of corporations, on the payment of interest to residents of the commonwealth, "to assess the tax imposed and provided for state purposes," which is the tax imposed by § 1, of the act, "upon the nominal value" of the corporate loan.

Bearing in mind that the tax in question here is, by the express terms of the act imposing it, a tax of "three mills on the dollar of the value" of the taxable subjects, and that this means actual cash value, it might well be questioned whether an assessment of the tax "upon the nominal value of each and every said evidence of debt," is such an application of the rate to the value of the property as would amount to a valid tax, especially when such assessment is not in any respect the result of the exercise of the judgment of the person making it, but merely an arithmetical calculation made in obedience to the mandate of the law.

But let us, for the sake of the argument, assume that the assessment prescribed in § 4, is, so far as the principle of the valuation is concerned, a valid assessment. We have then this state of affairs: All mortgages and loans are, by § 1 of the act, taxable at the rate of three mills on the dollar of their actual cash value, and all of them, except corporate mortgages and loans, are in practice so taxed; while corporate mortgages and loans, which are undoubtedly embraced in the general terms "all mortgages and loans," are in practice taxed at the rate of three mills on their nominal value, which often differs by one hundred per centum from their actual value, so that the tax is in many cases double and in others not more than one half the amount it would be if the tax were upon the actual value; with the result that of two persons owning taxable property, of exactly the same value, one is taxed twice as much as the other, and this, not because of any defect in the working of the law, but as a necessary result of its provisions. And the question to be answered is, are taxes so levied and assessed

uniform within the meaning of that term as employed in the constitution ?

It must be conceded that the uniformity required is not absolute, for as said by Mr. Justice MILLER, in State Railroad Tax Cases, 92 U. S. 612, " Perfect equality and perfect uniformity of taxation as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized.' It may be admitted that the system that most nearly attains this is the best. But the most complete system that can be devised, must, when we consider the immense variety of subjects which it embraces, be imperfect. And when we come to its application, . . . . . made by men whose judgments and opinions must vary as they are affected by all the circumstances brought to bear upon each individual, the result must inevitably partake largely of the imperfection of human nature, and of the evidence on which human judgment is founded."

This extract points out very clearly one of the limitations with which the requirement of uniformity must be understood. Taxes are uniform in the sense of the constitution, when any inequality of burden which results from their imposition is due to the imperfect knowledge or judgment of the persons whose duty it is to assess them. When, however, the law itself is so framed that it necessarily produces gross inequality of burden, no matter how perfectly it may be administered, it would seem impossible to avoid the conclusion that it violates the mandate of the constitution. If some of the subjects of a given class were not taxed at all while others were, there would, of course, be a gross inequality, in that the burden would fall on one and not on another. But this is forbidden by § 2, of article IX., which ordains that all laws exempting property, other than certain enumerated subjects, shall be void. Hence, if any given class of subjects be taxed, none belonging to that class can be exempted.

The mandate in favor of uniformity in § 1, article IX., means more than this. It is not satisfied until the taxes, which are imposed upon all the subjects of a given class, are so imposed that each person owning the same species of property, shall pay the same amount of tax, upon the same value, when that has been ascertained by the proper authority. The

values need not, of course, be absolutely the same; but they must be so in the judgment of the official whose duty it is to fix them. When this is done, and when, the rate being fixed, the proportion between values and taxes is constant, theoretical uniformity has been attained; and this is all that is or can, practically, be required. But, if in one case the value to which the rate is applied is the expression of the judgment of the proper official, and in another a mere arbitrary nominal value, it is in the very nature of the case that the resulting taxes cannot be uniform. There can be no definite proportion between the value of the property of the citizen and the amount of his taxes. And, as the findings of fact show, this would be the inevitable consequence of the enforcement of the law in question in this case, no matter how faultless its administration might be. We have, therefore, no hesitation in declaring that if all mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment, including corporate loans, are by the act of 1885 embraced in the same class of subjects, § 4 of the act violates the constitutional mandate in favor of uniformity, and cannot be enforced.

Nor would the result be different if we should assume that the class to which corporate loans belong includes the mortgages, bonds and evidences of debt of corporations only. The findings of fact show that there are large amounts of bonds and evidences of indebtedness of corporations, not doing business in this state, which are held and owned here. These are by the act taxable at their actual cash value, to be fixed by the local assessors, while the same subjects of taxation when issued by corporations doing business in the state, are to be assessed at their nominal value. Hence the same want of uniformity which we have condemned above would exist here also, and must come into like condemnation.

But it has been suggested that the corporate loans mentioned in § 4, form of themselves a distinct class. Let us assume that this is so. Then, under the facts, the necessary working of the law is that a citizen owning these loans to the value of ten thousand dollars, may pay a less amount of tax than another whose holdings are worth only five thousand. The only difference between the working of the law, on this

assumption and on the other, would be that while in the other cases some of the valuations would be arbitrary, here they would all be so; there, in some cases there would be no definite proportion between the real value and the tax; here, the want of proportion would exist in all cases.

[The conclusion is, that the act cannot be construed in harmony with the constitutional mandate as to uniformity of taxes by adopting any possible system of classification, and that it is, therefore, as to § 4, unconstitutional and void. If this be so, judgment must go in favor of the defendant, and it is unnecessary to return to the question of the validity of the assessment, which we therefore leave to be discussed hereafter, if it arises. Nor shall we now consider the other objections to the settlement which are specified in the appeal. If we are in error in deciding the one to which we have given special attention to be fundamental, the others will appear upon the record, and will have to be passed upon before a final judgment can be entered. We prefer to rest our judgment, at present, upon the objection to the law for want of uniformity, in the taxes levied under it.] [6]

We have no doubt that the defendant has a legal standing in this appeal, to test the constitutionality of the law and the validity of the settlement under it. While the tax is not imposed upon it, and it is simply required to retain the tax out of interest due and pay it over to the state, it is not, as it is argued on behalf of the commonwealth, a tax collector in the strict sense of the term. The settlement is against it; if it failed to appeal within sixty days after notice, the settlement would become conclusive against it; there is no provision in the act for notice to the individuals who must pay the tax, and their rights, probably, cannot be determined in this proceeding; defendant has therefore a direct interest in the matter which entitles it to be heard, and if the tax is illegal and unconstitutional it was under no obligation to retain it and pay it over to the state.

We have not thought it necessary to discuss or cite the cases relied upon by the learned attorney general and his able deputy. We do not think anything of authority will be found in them contrary to the conclusions at which we have arrived.

Decision of Court below.

We have therefore arrived at the following:

CONCLUSIONS OF LAW.

1. That § 4, of the act of June 30, 1885, is repugnant to § 1 of article IX. of the constitution of Pennsylvania, which ordains that "all taxes shall be uniform within the territorial limits of the authority levying the same," and is therefore void.[1]

2. That the settlement appealed from in this case is illegal and invalid because the taxes claimed therein, under § 4 of the act of June 30, 1885, are not uniform, as required by § 1 of article IX. of the constitution.[2]

3. That the defendant in this case has the legal right to interpose the defence of the unconstitutionality of the act, and the invalidity of the settlement made under it.[3]

4. That judgment must be given in favor of defendant.[4]

We therefore direct judgment to be entered in favor of defendant, unless exceptions be filed within the time limited by law.

To the foregoing decision the commonwealth filed exceptions, specifying that the court erred:

1. In the first conclusion of law.[1]

2. In the second conclusion of law.[2]

3. In the third conclusion of law.[3]

4. In the fourth conclusion of law.[4]

5. In not entering judgment for the commonwealth.[5]

6. In not finding, as a matter of fact, that, under the evidence of the defendant, the averages of the values of the corporate loans in question were as follows: General average of all quotations, 98; general average, excluding quotations under 50, 101.

7. In that part of the decision embraced in [ ] [6]

These exceptions were subsequently disposed of by the following opinion:

We are asked, by the sixth exception filed by the commonwealth, to find that, excluding from the computation some of the lower values, "the averages of the values of the corporate loans," mentioned in the exhibit attached to the depositions given in evidence by defendant, is substantially par. This would be equivalent to finding that if an equal amount of each

of these securities was assessed at their nominal value, the proportion that would be assessed too high would equal the proportion assessed too low, and hence that while the state would receive too little tax from the holders of the one, it would be compensated for this loss by receiving too much from the holders of the other.

We are unable to see how this finding would strengthen the commonwealth's case. On the other hand, it seems to us to bring out, in the clearest light possible, the fact that the assessment of the securities at their nominal value must necessarily result in taxes which are not uniform. The very idea of average implies, necessarily, want of uniformity. But, as we are requested by the commonwealth so to do, we find that the arithmetical calculation contained in the sixth exception is substantially correct.

We do not think it necessary to add anything to what has been already said in the opinion heretofore filed, and, therefore, the exceptions, except as above stated, are overruled and judgment is directed to be entered in accordance with said opinion.

Thereupon, the commonwealth took this writ specifying that the court erred:

1–5. In overruling the commonwealth's exceptions.[1 to 5]

6. In that part of the decision embraced in [ ][6]

*Mr. W. S. Kirkpatrick, Attorney General,* and *Mr. John F. Sanderson, Deputy Attorney General,* for the plaintiff in error:

As preliminary to the discussion of the points upon which the action of the court below was based, it is urged: (1) The tax in question was properly assessed against the corporation defendant, in accordance with the practice of the accounting department since 1844, at least: Maltby v. Railroad Co., 52 Pa. 140; Commonwealth v. Railroad Co., 2 Pears. 394; Delaware etc. R. Co. v. Commonwealth, 66 Pa. 64. (2) The tax is settled against the corporation as a tax collector, and not against the treasurer as a person liable as a taxable: Maltby v. Railroad Co., 52 Pa. 140; Commonwealth v. Railroad Co., 2 Pears. 395; Commonwealth v. Railroad Co., 104 Pa. 89. (3) The performance of the duty and function imposed by the

Arguments.

act upon the corporation, is legally and constitutionally obligatory : Commonwealth v. Railroad Co., 2 Pears. 395; Commonwealth v. Railroad Co., 104 Pa. 106; Buffalo etc. R. Co. v. Commonwealth, 3 Brewst. 374 ; Maltby v. Railroad Co., 52 Pa. 140; Commonwealth v. Railroad Co., 104 Pa. 89; Haight v. Railroad Co., 6 Wall. 15 ; New Orleans v. Deposit Co., 31 La. Ann. 826; Wood's Railway L., 1696.  (4) No assessment further than § 4 of the act of 1885 provides, is requisite in order to authorize the deduction of the tax : Commonwealth v. Phoenix Iron Co., unreported; Maltby v. Railroad Co., 52 Pa. 140; Delaware etc. R. Co. v. Commonwealth, 66 Pa. 66 ; Susq. Canal Co. v. Commonwealth, 72 Pa. 72 ; Buffalo etc. R. Co. v. Commonwealth, 3 Brewst. 374; Commonwealth v. Railroad Co., 104 Pa. 89; Commonwealth v. Martin, 107 Pa. 185.

I. If, therefore, the corporation may lawfully be required to collect the tax, and if the legislative rule of assessment at par is sufficient to enable the corporation to ascertain the tax, it must act under the law, and having refused to act, no defence based upon alleged constitutional or other rights of the taxable person can be set up to justify it or excuse it from liability on such refusal : Moore v. Allegheny, 18 Pa. 55 ; Commonwealth v. Philadelphia, 27 Pa. 497 ; State v. McNally, 34 Me. 210 (56 Amer. D. 650); Stanford v. Nichols, 13 Mass. 286; Wellington v. Petitioners, 16 Pick. 87 (26 Amer. D. 631); State v. Carroll, 38 Conn. 449 (9 Amer. R. 409); Baker v. Braman, 6 Hill 47 (40 Amer. D. 387); Commonwealth v. McCombs, 56 Pa. 436; Clark v. Commonwealth, 29 Pa. 129; Cocke v. Halsey, 16 Pet. 71; People v. White, 24 Wend. 520 ; Hencke v. McCord, 55 Ia. 378; Taylor v. Shrine, 3 Brev. 516; Lee v. Tillotson, 24 Wend. 337 (35 Amer. D. 624); People v. Railroad Co., 15 Wend. 113; Crowell v. Lawrence, 41 N. Y. 131; People v. Salomon, 54 Ill. 39; Sessums v. Botts, 34 Tex. 335; Chicago etc. R. Co. v. Langdale, 56 Wis. 614; Bidwell v. Pittsburgh, 85 Pa. 412; Motz v. Detroit, 18 Mich. 495; Ricketts v. Spraker, 77 Ind. 372; Cooley, Const. Lim., 161–167; Morgan v. Plank Road, 2 Dutch. 99; Clifton v. Gwynn, 8 N. C. 145; Waters v. Maryland, 1 Gill 302; Wilkinson v. Benedict, 56 Ga. 290; People v. Cooper, 10 Ill. App. 384; Houston Co. v. Dwyer, 59 Tex. 113; Machiasport v. Small, 77 Me. 109; Alabama v. Lott, 69 Ala. 147; Maryland v.

Railroad Co., 34 Md. 344; Smith v. Titcomb, 31 Me. 272; Williams v. Holden, 4 Wend. 223; State v. Cunningham, 8 Blackf. 339.

II. If, however, the corporation defendant, whose relations as a collecting agency under these and similar taxing statutes have been so clearly and accurately defined by the courts, may deny the validity of the statute in question and avail itself of such defences as are peculiar and appropriate to the taxable himself, such defences can only be upon the ground that the statute is obnoxious to some clear prohibition in the constitution.

(a) The power to tax is inherent in the state and is an essential and necessary ingredient of sovereignty; it is not derived from the constitution and exists independently of it: Kirby v. Shaw, 19 Pa. 260. Courts cannot annul tax laws because they operate unjustly or unequally. If they could, they could defeat all taxation, for there never was a tax that was not more or less unjust and unequal in its practical working. The object of the constitution is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations, the power of the legislature to make laws would be absolute: People v. Draper, 15 N. Y. 549; People v. Flagg, 46 N. Y. 401; Monongahela Nav. Co. v. Coons, 6 W. & S. 117; Commonwealth v. Hartman, 17 Pa. 119; Sharpless v. Philadelphia, 21 Pa. 160, 164; Weister v. Hade, 52 Pa. 474. The limit of the judicial function, in respect to the exercise of the taxing power, is the power to determine whether any particular tax law violates the provisions of the constitution.

(b) It is well settled that no statute is unconstitutional merely because it is wrong in policy or principle, contrary to sound public morals or injurious to private rights: Erie etc. R. Co. v. Casey, 26 Pa. 287; Commonwealth v. Maxwell, 27 Pa. 458; Sharpless v. Philadelphia, 21 Pa. 160. A party who wishes to pronounce a law unconstitutional, takes upon himself the burden of proving beyond all doubt that it is so: Erie etc. R. Co. v. Casey, supra; Commonwealth v. Butler, 99 Pa. 540. Any labored or painful course of reasoning leading to a conclusion as to the unconstitutionality of a law, and fairly leaving the question still debatable in the mind, would furnish sufficient ground to doubt the unconstitutionality asserted.

1. Section 4, of the act of 1885, under which these taxes are imposed, does not transcend the limitations of article IX. of the constitution. It will be seen from the language of the two sections of the article that there is no restriction upon the kinds of taxes. There is no restriction to property only; nor is there a restriction to ad valorem taxes; nor upon the methods of taxation, by prescribing that it shall be based upon the principle of valuation. But whatever taxes are imposed, and upon whatever subjects, those taxes must be uniform, and it will be noticed that the word, equal, is not used anywhere in the section. Moreover, the requirement of uniformity is limited in its application. It does not say simply, All taxes shall be uniform, but confines the rule of uniformity to a class of subjects only. The inherent power to tax or not to tax all subjects, still remains. The principle of classification is recognized and the rule of uniformity is made applicable and confined to the classes which the legislature may select: Banger's App., 109 Pa. 79; Kittanning Coal Co. v. Commonwealth, 79 Pa. 104; Kirby v. Shaw, 19 Pa. 258; Durach's App., 62 Pa. 491; Hammett v. Philadelphia, 65 Pa. 146; Washington Avenue, 69 Pa. 352; Weber v. Reinhard, 73 Pa. 370; Butler's App., 73 Pa. 448.

2. The foregoing cases are the landmarks of the constitutional law of Pennsylvania relative to taxation prior to 1874. They show: (1) That equality in taxation is impracticable. (2) That classification of subjects is permissible. (3) That exemption from taxation of any class or of any portion of a class of subjects was allowed. (4) That taxation by special laws was allowed. Here the new constitution intervenes, and by §§ 1 and 2 of article IX., the following reforms are declared: (1) That taxation by special laws is prohibited. (2) Exemption from taxation of any portion of a class is prohibited. Equality of taxation is not hinted at, and classification is the very basis of the constitutional declaration. Taxes are uniform, therefore, in the sense of the constitution, when all the members of a given class are taxed without exception. They are not uniform, if any members of the class are exempted. Any method, therefore, of taxing a class of subjects which was lawful before the adoption of the new constitution is lawful now, and any question as to inequality of burden upon the

members of the class, resulting from the operation of a general and uniform rule of taxation, must be determined independently of its provisions: Northampton Co. v. Leh. C. & Nav. Co., 75 Pa. 461; Kittanning Coal Co. v. Commonwealth, 79 Pa. 104; Lehigh Iron Co. v. Lower Macungie Tp., 81 Pa. 482; Kelly v. Pittsburgh, 85 Pa. 170; Kirby v. Shaw, 19 Pa. 258.

3. Applying the constitutional provision in the light of the foregoing principles, we contend:

(a) That the subjects of taxation in this case, to wit, loans of corporations incorporated by or doing business in Pennsylvania, have been properly grouped as a class. Classification may be based upon characteristics that describe and classify the subjects of the class, or upon the adaptability of those subjects to the methods and process involved in the act of taxation. If considered with reference to either of these principles of division, this class of loans is properly separated from loans of individuals; classification is not a judicial but a legislative function: Germania L. Ins. Co. v. Commonwealth, 85 Pa. 515. We further contend:

(b) That the taxes imposed by the act are uniform in the sense of the constitution. Granting, for the purpose of the argument, that loans issued by corporations and individuals cannot properly be separated into classes, it does not follow that because upon one division of these loans one method and means of taxation is prescribed, and upon another portion another method is applied, they are open to the objection of a want of uniformity. If there is substantial uniformity, whether in results or in methods, however different the procedure, there is a compliance with the constitutional provisions: Fox's App., 112 Pa. 353; Hunter's App., 18 W. N. 411; Loughlin's App., 19 W. N. 517; State Railroad Tax Cases, 92 U. S. 575; Stanley v. Supervisors, 121 U. S. 548; Commonwealth v. Martin, 107 Pa. 194.

4. The objection that this tax is the taking of property without due process of law, in the constitutional sense, is not tenable. This objection is based upon the theory that (a), there is no assessment provided for and (b), no notice to the tax payer of the assessment, either in the first instance or with the right of appeal.

(a) There is nothing in the nature of taxation which re-

quires all taxes to be based upon valuation. Wherever taxes are assessed upon valuation, then, as part of the process of assessment, such valuation should be made. But no assessment is required when the statute itself prescribes the amount to be paid, and this can be recovered by suit: United States v. Halloram, 14 Blatch. 1; Weber v. Reinhard, 73 Pa. 370; Savings Bank v. United States, 18 Wall. 227; King v. United States, 99 U. S. 233; Commonwealth v. Railroad Co., 104 Pa. 106; Maltby v. Railroad Co., 52 Pa. 140; Del. etc. R. Co. v. Commonwealth, 66 Pa. 66; Susq. Canal Co. v. Commonwealth, 72 Pa. 72; Buffalo etc. R. Co. v. Commonwealth, 3 Brewst. 374.

(b) For the reason that the amount of the tax, as well as the amount of the valuation, which elements constitute the entire case upon which the tax is claimed, are both fixed by statute, and as no hearing could change these elements or affect their application, it is no objection to the tax in question that no notice to the tax payer is provided for: Hager v. School District, 111 U. S. 701; Santa Clara Co. v. Railroad Co., 18 Fed. R. 426; Commonwealth v. Martin, 107 Pa. 194; McMillen v. Anderson, 95 U. S. 37; Armstrong v. Harmoning, 118 U. S. 194; Banger's App., 109 Pa. 79; Davidson v. New Orleans, 96 U. S. 97.

*Mr. M. E. Olmstead*, for the defendant in error:

I. Section 4 of the act of 1885 violates § 1, article IX. of the state constitution.

(a) Section 1, of the act, taxes all mortgages in one class, at the rate of three mills on the dollar of *the value thereof*. The words italicized are common to every act taxing this species of property for the past half century. " The legislature has thus frequently defined the phrase, every dollar of the value thereof, to signify actual value, and the construction which is deducible from the continued, general and uniform practice and understanding throughout the commonwealth, is the same: Commonwealth v. Railroad Co., 104 Pa. 98. When the legislature used the same phrase in the act of 1885, of course it intended the same signification.

(b) Sections 6 to 13 require mortgages issued by individuals and foreign corporations to be returned to local assessors and

assessed at actual value, with notice to the owner and right of appeal. Section 4 requires mortgages issued by corporations doing business in Pennsylvania to be assessed at par, with no notice to the owner or right of appeal. Now, the nominal or par value of corporate loans is not their actual value. The former is their value in name; the latter their value in fact. It thus appearing from the fourth finding of fact by the court below, that the par value is no substantial or just measure of actual value, it follows that the act of 1885 works discrimination and lack of uniformity in several particulars.

1. The act discriminates between mortgages issued by corporations of Pennsylvania, which are to be assessed arbitrarily at their nominal value, and mortgages issued by individuals, which are to be assessed at their actual value, the value for which they would sell bona fide. But if it be urged that the legislature may tax mortgages issued by individuals, and mortgages issued by corporations, in separate classes, the answer is, (a) that they are not subject to such classification. The tax is upon mortgages, as property, and they are all subjects of one class which cannot be subdivided. (b) The legislature has not attempted such classification.

2. The act discriminates also between mortgages issued by corporations of Pennsylvania, and mortgages issued by corporations of other states, but owned by residents of Pennsylvania; between the different mortgages issued by corporations of Pennsylvania, which, while differing in actual value, as the evidence shows, from nine cents on the dollar to one hundred and fifty, are all required to be taxed at the same valuation, their nominal value; and even as between different mortgages issued by the same Pennsylvania corporation.

3. Uniformity of taxation means more than uniformity in the rate: Bank of Columbus v. Hines, 3 Ohio 1; Cameron v. Capellar, 41 Ohio 533. It means equality of taxation: Cooley, Const. Lim., 495; Washington Avenue, 69 Pa. 362; Railroad Co. v. Commissioners, 75 N. C. 475; Woodbridge v. Detroit, 8 Mich. 301; Dundee Trust etc. Co. v. Charlton, 32 Fed. R. 192; Fox's App., 112 Pa. 337, 352. Even the rate is not uniform in a legal sense: People v. Weaver, 100 U. S. 539, 544. "It is perhaps vain to expect that any system of taxation shall produce exact uniformity; it is however both reasonable and

possible to levy the taxes in such a manner that substantial justice and uniformity shall be the result:" Mr Justice PAXSON in Fox's App., supra. Such substantial uniformity *is* reached in the taxation of mortgages issued by individuals and foreign corporations, which are returned by the owners to the assessors under § 6 of the act. But under § 4, the tax payer is not permitted to make a return, and is not heard in the matter at all.

II. Section 4 of the act of 1885 fails to provide for a valid assessment of corporate loans, and is substantially the same as the acts of 1879 and 1881, which, for the same reason, were declared inoperative by this court.

1. As already shown, the tax imposed by the first section of the act of 1885 upon all mortgages is a tax upon their actual value. The very foundation of taxation by value is a valid assessment: Cooley on Taxation, 259; Blackwell on Tax Titles, 114–120; Hilliard on Taxation, 290, 291; Thurston v. Little, 3 Mass. 429; Abbott v. Lindenbower, 42 Mo. 168; Bratton v. Mitchell, 1 W. & S. 310; Miller v. Hale, 26 Pa. 432; Commonwealth v. Blair Co., 2 Pears. 416, 419. A mere ascertainment of the nominal value of corporate loans is no assessment of the actual value, which alone is made taxable by § 1 of the act: People v. Assessors, 2 Hun 585; People v. Commissioners, 4 Hun 595. This court has already fully considered the question of assessment in Commonwealth v. Railroad Co., 104 Pa. 89, involving the validity of the acts of 1879 and 1881, and has declared that a mere ascertainment of the nominal value of mortgages is not a legal assessment of them.

III. The method of assessment provided by § 4 of the act of 1885, requires the withholding from the amount due on a contract of an arbitrary sum of money, claimed as a tax, without reference to the value of the property, without notice to the owner, and without any right of appeal or remedy, if he had notice; indeed, without even ascertaining the owner. It is therefore violative of the constitutional provision that no person shall be deprived of his life, liberty or *property* without due process of law: Section 9, article I., constitution of Pennsylvania; article V. and § 1, article XIV., amendments to the constitution of the United States.

1. A mere reference to the authorities is sufficient: Cooley

on Taxation, 265–6; Philadelphia v. Miller, 49 Pa. 448; Thomas v. Gain, 35 Mich. 155 (24 Amer. R. 535) ; Stewart v. Palmer, 74 N. Y. 186; Ervine's App., 16 Pa. 256 ; Davidson v. New Orleans, 96 U. S. 97 ; State v. Readington Tp., 36 N. J. L. 70; San Mateo Co. v. Railroad Co., 13 Fed. R. 722. "No tax is due until it is assessed:" Miller v. Hale, 26 Pa. 432; Commonwealth v. Blair Co., 2 Pears. 416, 419; Abbott v. Lindenbower, 42 Mo. 168 ; Thurston v. Little, 3 Mass. 432; Hilliard on Taxation, 290–1; Blackwell on Tax Titles, 114, 120; Cooley on Taxation, 259.

IV. The corporation has the legal right to interpose the defence of the unconstitutionality of the act, and the invalidity of the settlement made under it.

1. The right of appeal from the settlement of the auditor general is conferred by § 11, act of March 30, 1811, 5 Sm. L. 230.  For more than three quarters of a century it has been the custom to enter appeals in the manner thus provided, and in all that time it has never been doubted that the party appealing might question the constitutionality of the act under which the assessment was made.   If an assessment of taxes be made in violation of law it is a void act, and the collector in enforcing its collection is a trespasser : Tuttle v. Everett, 51 Miss. 27 (24 Amer. R. 622); Cooley on Taxation, 562; Moore v. Allegheny, 18 Pa. 55 ; Ruth's App., 10 W. N. 498'; People v. Mygatt, 45 N. Y. 653; Newman v. Supervisors, 45 N. Y. 653; Union N. Bank v. Mayor, 51 N. Y. 638; Bank of Commonwealth v. Mayor, 43 N. Y. 184.

2. The corporation has a direct interest in the constitutionality of the act; it is not a tax collector in any proper sense of the word : People v. Halsey, 53 Barb. 547.   An unconstitutional act is not a law: Norton v. Shelby Co., 118 U. S. 425. The right of the corporation to raise the question was recognized in State Tax on Foreign-held Bonds, 15 Wall. 300; Commonwealth v. Railroad Co., 104 Pa. 89.

V. The claim of the commonwealth includes tax on $415,000 of bonds owned by corporations of the state of Pennsylvania, upon which no tax is imposed by the act of 1885 : Fox's App., 112 Pa. 337; Hunter's App., Guarantee Trust Co. v. Loughlin, and Del. M. S. Ins. Co. v. Loughlin, 18 W. N. 411 ; Loughlin's Appeals, 19 W. N. 517.

*Mr. John G. Johnson*, submitted a brief on behalf of certain holders of corporate bonds.

OPINION, MR. JUSTICE CLARK:

This case comes here upon an appeal, under the act of 1811, from the settlement by the auditor general and state treasurer, against the Delaware Division Canal Company, for state taxes on the bonded indebtedness of the company, under the act of June 30, 1885. The claim of the commonwealth is for taxes upon that portion of said indebtedness held by resident owners, at the rate of three mills on the nominal value thereof, for the year ending on the first Monday in November, 1886.

The Delaware Division Canal Company, the defendant, as we learn from the findings in the court below, is a corporation of the state of Pennsylvania, chartered in 1858, and having authority to borrow money, issue bonds, and to secure the same by mortgage. During the year ending as aforesaid, the defendant's bonds, secured by mortgage, were outstanding to the amount of $800,000; of these, $700,000 were held by residents, and $100,000 by non-residents of the state. The company deny the authority of the legislature to require an assessment to be made by the treasurer; and, although they made a return of the amount of the outstanding indebtedness, they refused to assess the tax or deduct it from the interest, as required by the fourth section of the act referred to. The company further contend that by the first section of the act of 1885, *all* mortgages, money in the hands of solvent debtors, etc., etc., are made taxable at the rate of three mills " on the dollar of the value thereof annually," which is the actual value, and, therefore, to create a valid tax on corporate loans the rate must be applied to the actual and not the nominal value thereof, and that the actual value can be ascertained only by assessment in due form of law, upon notice to the holder and with the right of appeal. Their contention is, that, in view of the provisions of the first section of the act, the system of taxation provided for in the fourth section, as to corporate loans, is repugnant to that clause of the constitution which provides that " all taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax." The argument is, that the taxing section

of the act subjects all the taxable subjects therein designated, including corporate loans, to a tax of three mills on the dollar of their value; that all the other subjects are valued and taxed according to such value by the local assessors, while corporate loans are, without being valued and assessed, taxed at their nominal value; that nominal value is not a certain measure of actual value, which is often much greater and often much less; so that, in many instances, the tax upon corporate obligations is much more, and, in many others, much less, than it would be if imposed upon the actual value.

The case of the Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89, which has been much referred to in the argument of counsel, on the subject of assessment, presented a wholly different question from that involved in this controversy. The taxation there complained of was of corporate bonds, under the act of June 7, 1879, P. L. 112, and its supplement of June 10, 1881, P. L. 99. By the express words of these acts, such securities were made taxable at the rate of four mills "on every dollar of the value thereof," which was the precise basis for assessment of individual property and securities, under the general revenue system of the state, by the local assessors; the rate only was different. The phrase "every dollar of the value thereof" was held to be the actual value; and as neither the act of 1879 nor 1881 made any provision for the ascertainment of the actual value, it was held that they did not constitute an independent scheme for the taxation of corporate loans, but were to be aided by the machinery of the act of 1844; for, as the loans were taxable in the hands of resident owners, at their actual value, a legal ascertainment of that value was essential to the assessments. The tax of a citizen, as we there said, is the result of the rate applied to the value of the property he owns, and he is not taxed until the rate is thus applied, by some legal mode of adjustment. It was held further, that neither the return of the amount of the indebtedness, nor the account settled by the auditor general thereon, could be taken as an assessment, for neither the corporation nor the accounting officer of the commonwealth, had any authority to make it; that could not be regarded as an assessment of an ad valorem tax, made by a person whose interests were adverse, who was charged with no duty, and was under

no oath or obligation ; where the real party in interest had no notice, no right to interfere if he had notice, and no appeal; as there was no other means of assessment provided by law, it was the duty of the local assessors, in making the general assessment in 1880 and in 1881, to value and assess corporate bonds wherever found in the hands of resident owners, and it was presumed in law that these officers had performed their full duty in the premises.

But, by the act of June 30, 1885, P. L. 193, the legislature has attempted to supply the machinery, which was found to be wanting in the acts of 1879 and 1881, for taxation of corporate loans, and, in so doing, has adopted substantially the system suggested by the 42d section of the act of April 29, 1844, P. L. 501, relating to the taxation of municipal loans in the hands of resident holders.

By the first section of the act of 1885, *all* mortgages, money owing by solvent debtors, etc., are made "taxable for state purposes, at the rate of three mills on the dollar, of the value thereof, annually."

By the fourth section, however, it is provided, "that hereafter it shall be the duty of the treasurer of each private corporation, incorporated by or under the laws of this commonwealth, or the laws of any other state, or of the United States, and doing business in this commonwealth, upon the payment of any interest on any scrip, bond, or certificate of indebtedness, issued by said corporation to residents of this commonwealth, and held by them, to *assess* the tax, imposed and provided for state purposes upon the *nominal value* of each and every said evidence of debt, and to report on oath, annually on the first Monday of November, to the auditor general the amount of indebtedness of the corporation owned by residents of this commonwealth, as nearly as the same can be ascertained ; and it shall be his further duty to deduct three mills on every dollar of the interest paid as aforesaid, and return the same into the state treasury," etc.

By the sixth section, the obligations of public or private corporations, the tax upon which is required by law to be collected by the corporation from the holder, and paid into the state treasury, are wholly withdrawn from the general and ordinary processes of assessment by the local assessors.

We are clear in our convictions that if there is any constitutional authority to impose the tax, under the fourth section of the act, the settlement by the accounting officer was rightly made against the company. The act constitutes the company, or its treasurer as such, the collector of the tax, and, upon failure to discharge the duty imposed by law, the settlement is properly made against the company, whose servant he is, as in case of the default of any other officer of the government, upon whom a like duty is imposed. The obligation rests upon the company, but as the company can only act through its officers, the default of the officer is esteemed the default of the company, and the penalty is visited upon them. The treasurer is designated, in order that there may be no evasion; he has exceptional opportunities to know, and has the power in his own hands to perform the several matters required. This system of collecting state taxes was first introduced under the 42d section of the act of April 29, 1844, P. L. 501, where it is applied to municipal loans, and by the act of April 30, 1864, P. L. 218, was first extended to the loans of private corporations.

In a number of cases, both before and since the adoption of the present constitution, this court has affirmed the right of the commonwealth to impose this duty upon corporations, both public and private: Maltby v. Railroad Co., 52 Pa. 140; Commonwealth v. Phoenix Iron Co., argued at the January term, 1868, and not reported; Delaware L. & W. R. Co. v. Commonwealth, 66 Pa. 69; Commonwealth v. Martin, 107 Pa. 185; and Commonwealth v. Lehigh V. R. Co., 104 Pa. 89. In the last case cited we said: " We can see no constitutional or other difficulty in the way of obliging the officers of corporations, municipal or private, by appropriate legislation, to assess and collect taxes upon their corporate loans or stocks. This method of reaching subjects capable of successful concealment, and liable to escape the notice of the most vigilant assessor, has for many years been recognized as a valid exercise of legislative power." . . . . . " The tax is imposed indiscriminately upon all mortgages, etc., in the hands of the owner or possessor, but the corporation is made the collector of the tax upon the corporate loan. This was the construction put upon the act of April 30, 1864, by this court, in the case of Maltby v. Railroad

Co., 52 Pa. 140, and the reasons there assigned are generally applicable here." The case of Maltby v. Railroad Co., supra, it is true, was overruled in the Supreme Court of the United States, 15 Wall. 300, in so far as it recognized the taxation of bonds in the hands of non-resident owners, but to the extent stated, it is still of undoubted authority.

But, assuming the power of the legislature to enforce this method of collecting, it is contended that the tax is not uniform on the same class of subjects, and is therefore illegal and void; that whilst *all* mortgages, money in the hands of solvent debtors, etc., are by the act of 1885 made taxable for state purposes, annually, at the rate of three mills " on the dollar of the value thereof," the like obligations of private corporations are to be assessed, at the same rate, upon " the nominal value." The actual value of private or individual obligations for money in the hands of solvent debtors is, as a general rule, equivalent to their nominal value. Such obligations are not ordinarily put upon or quoted in the market, and therefore have no variable market value as other securities have; on the contrary, the actual value of corporate securities is dependent upon a variety of conditions, independent of the value of the debtor's estate— the fluctuations of trade, the date of maturity, the rate of interest, the amount of competition, and generally upon the stringency of the market and the financial condition of the country. Some of these securities, it is said, upon which interest is regularly paid, sell in the market as low as fifty cents, and others, perhaps, as high as one hundred and fifty cents, on the dollar. And it is argued that as by the first section of the act of 1885 individual and corporate obligations constitute a single class of subjects for taxation, the act unjustly discriminates between them in the fourth section, and that therefore the taxes imposed cannot be said to be uniform upon the same class of subjects.

The first section of the act does indicate certain subjects for taxation, at a certain rate, and these may in some sense be said to constitute a general class; but the classification of these subjects is extended by the fourth section; one class, consisting of the securities of private corporations, is to be taxed at their nominal value, and the residue (excepting the securities of municipal corporations, which are still taxable

under the 42d section of the act of April 29, 1844) constitute another class, taxable at the same rate, but upon their value to be ascertained under the ordinary processes of assessment by the local assessor.

The new constitution does not withdraw the power of classification from the legislature: Kitty Roup's Case, 81* Pa. 211; Kittanning Coal Co. v. Commonwealth, 79 Pa. 100; indeed, the power is necessarily implied in the constitutional provision to which the fourth section of the act of 1885 is supposed to be obnoxious. The power to impose taxes for the support of the government, subject to the limitations of the constitution, still belongs to the legislature; the selection of the subjects, their classification, and the methods of collection are purely legislative matters. When the action of the legislature, with respect to these matters, is not repugnant to the constitution, it would certainly be a case of the grossest inequality, which would call for the intervention of the courts: Kelly v. City of Pittsburgh, 85 Pa. 170. It may be conceded, however, that classification should be made according to some reasonable, practical rule, drawn from experience, which would prevent a gross inequality in the burdens of taxation. "It must," in the language of Mr. Justice AGNEW, "visit all alike in a reasonably practicable way, of which the legislature may judge, but within the just limits of what is taxation. Like the rain, it may fall upon the people in districts and by turns, but still it must be public in its purpose and reasonably just and equal in its distribution, and cannot sacrifice individual right by a palpably unjust exaction. To do so is confiscation, not taxation; extortion, not assessment; and falls within the clearly implied restriction in the Bill of Rights:" Washington Avenue, 69 Pa. 352.

Absolute equality is of course unattainable; a mere approximative equality is all that can reasonably be expected. A mere diversity in the methods of assessment and collection, however, if these methods are provided by general laws, violates no rule of right, if when these methods are applied the results are practically uniform. If there is a substantial uniformity, however different the procedure, there is a compliance with the constitutional provisions: Fox's App., 112 Pa. 353; even when there may be some disparity of results, if uniformity is

the purpose of the legislature, there is a substantial compliance: Hunter's App., 18 W. N. 411, 394; Loughlin's App., 19 W. N. 517. Nor is classification necessarily based upon any essential differences in the nature or, indeed, the condition of the various subjects; it may be based as well upon the want of adaptability to the same methods of taxation, or upon the impracticability of applying to the various subjects the same methods, so as to produce just and reasonably uniform results, or it may be based upon well-grounded considerations of public policy.

Hence it is that some classes of corporations are taxed upon net earnings, or income; others upon capital stock, the value thereof to be ascertained by their annual dividends, or in a certain event upon the actual value of the shares; others upon their gross receipts; insurance companies upon the gross amount of their premiums; coal and mining companies at a specific sum for every ton of coal mined, etc.

Real estate, for taxation, has been classified as seated and unseated, and for municipal purposes may, perhaps, admit of further classification: Kitty Roup's Case, supra. Collateral inheritances are distinguished from those that are direct, the former being subject to taxation, the latter not. Foreign insurance companies have been distinguished from domestic companies, and taxed independently and differently: Germania Ins. Co. v. Commonwealth, 85 Pa. 515. So, trades, professions, callings, and even single men have been taxed by classification, and it has been said that professional men may be classified as physicians, lawyers, clergymen, etc.; tradesmen as merchants, mechanics, etc.; and other persons as bankers, manufacturers, etc., and a uniform tax assessed upon each class: Banger's App., 109 Pa. 79. Not only have taxes been laid in all these various forms, rated on values, on dividends or profits, on premiums, on net earnings, and on gross receipts, but also by specific sums on specific articles. The road bed, station houses, rolling stock and equipments of a railroad company; the canal bed, and berm banks, the locks, lock houses, etc., of a canal company; the banking house or place of business of a banking company, etc., are withdrawn from the ordinary processes of general taxation and are reached in a tax upon capital stock, which has always been regarded as a tax upon the property and

assets. These several classifications and departures from uniformity in methods, were intended simply to bring about a just uniformity in results. So, places of amusement and the luxuries of life may be taxed in relief of the necessaries. Household and kitchen furniture, gold and silver plate, exceeding a certain value, pleasure carriages, and gold and silver watches, kept for use, prior to the act of May 13, 1887, P. L. 114, were selected from the like articles in trade, and from other articles of personal property, and with money at interest, were subjected to a special tax. Illustrations might be multiplied to show that classification does not depend upon differences in the physical nature or condition of the subjects selected, but upon a variety of considerations.

Corporate obligations by the fourth section of the act of 1885 are taken out of the general designation of subjects contained in the first, and as a distinct class are subject to a different standard of valuation, and the tax to a different method of collection. There are several reasons why corporate and individual obligations should be distinguished, in classification, not arising wholly out of any essential difference in their physical nature perhaps, but out of want of adaptation in our general tax laws to reach them, in the ordinary methods of taxation. They are, as a class, transferable by delivery, and therefore capable of concealment. The transactions out of which individual securities originate in the ordinary course of business for the loan of money, have more or less publicity. Experience has shown that the ordinary methods of valuation, as to these, do not fail of enforcement. But in the case of corporate loans, whilst corporate mortgages may be recorded in one city or county, the bonds may be found in the pocket of the holder in another city or county of the commonwealth. Experience has taught us that, in the ordinary processes of valuation, they are not found; the law, generally applicable, lacks adaptation to the discovery of this quality of obligations. Moreover, their negotiability gives them a commercial quality; a vast brood of bonds is covered by a single mortgage, and as they are issued they fly from hand to hand throughout the whole commercial world: it is only upon their annual return at the interest periods that their ownership can be ascertained. These securities constitute one of the commodities on sale in

the market; they are sensitive in many instances to the conditions which affect the price of stocks. They are subject to great fluctuations, caused by the condition of the money market, or the condition of the country, and sometimes by artificial or even accidental means. Well-informed men must differ greatly in their estimate of the value of such property. The stock market exhibits changes in the quotations daily, sometimes hourly. Presumptively, however, the nominal value is the true value of securities yielding and paying interest, and the legislature has therefore fixed the nominal value, or the par value, for the purpose of taxation. These peculiarities of corporate securities, with others, perhaps, that might be mentioned, arising partly from their nature and properties, and partly from a want of adaptation in our general system to reach this quality of subjects, give rise to their distinct classification.

The moment we concede the power to classify we have disposed of the question of uniformity, for then all that is required by the constitution is that the taxes shall be uniform upon the members of a class: Kitty Roup's Case, supra. Classification for purposes of taxation, as a general rule, is a matter for the legislature; it is the uniformity of taxation, according to that classification, which is for the courts, and it is plain that the act of 1885, having constituted corporate loans in the hands of resident holders a distinct class, does not discriminate against any member of that class. The tax is not upon the corporation, it is upon the holder of the corporate bonds; and the holder may be an individual, a partnership, a banker or broker, or a private corporation; the law is general, and applies to all holders. Whether the tax is paid or not is a matter of indifference to the corporation, for if they pay it, they may defalk it from the interest. The tax being paid by the debtor, out of the interest he pays to the creditor, we cannot see that there is any ground of complaint, that the obligations are taxed at their face value; the tax is to be deducted from the interest, and the payment of the interest, by the debtor himself, is presumptive evidence of his solvency: Commonwealth v. Phoenix Iron Co., supra. As to the power of the legislature, under such circumstances, to fix the face value of the obligation as the value for taxing purposes, we think there can

be no doubt. " The right of the financial officers of the corporation," says Chief Justice THOMPSON, in Del. L. & W. R. Co. v. Commonwealth, 66 Pa. 66, " to retain the three-mill tax, under the act of 1844, out of the interest payable to loan or bondholders of the company, under the act of April 30, 1864, without an assessment by the county commissioners, or assessing officers, was maintained to be undoubted in Maltby v. Reading & Columbia R. Co., 52 Pa. 140, and re-asserted in Commonwealth v. Phoenix Iron Co., not yet reported. The question is therefore settled." To the same effect are Susquehanna Canal Co. v. Commonwealth, 72 Pa. 72; Buffalo & Erie R. Co. v. Commonwealth, 3 Brewst. 374, and Commonwealth v. Martin, 107 Pa. 185.

The act of 1844 was the beginning of our present revenue system. That act repealed all laws theretofore passed for levying taxes for state purposes. The methods provided by the 42d section of that act for assessment and collection of state taxes on municipal bonds, has met the approval of the profession, and has in all cases been recognized as valid by the courts. A reference to the cases already cited will abundantly verify this statement. The fourth section of the act of 1885 is a substantial copy of the 42d section of the act of 1844; its purpose was simply to apply the same system to the taxation of corporate loans. It has proved to be an efficient and just method of collecting taxes upon this class of securities; it is easy of enforcement and precludes the escape of large amounts of taxable property, which would evade collection in the ordinary methods, and we are of opinion that it is in no way repugnant to the provisions of the constitution.

Although there is some diversity in the methods of procedure, as well as in the standard of valuation in the taxation of individual and corporate obligations, there is, in fact, no great disparity in results; the difference is more apparent than real. Individual mortgages, money in the hands of solvent debtors, etc., are ordinarily—indeed, we think universally—valued at their face. The actual value of an individual mortgage, or of an obligation for money in the hands of a solvent debtor, is presumptively its face value. If the mortgage is bad, or the obligor is not solvent, the debt is not taxable; if, on the contrary, they are good, the common experience of business men

is that the face value is the actual value, ascertained in the ordinary modes of assessment.

But in Fox's App., 112 Pa. 337, it was held that the tax on mortgages, etc., imposed by the first section of the act of 1885, does not extend to such securities, held by private corporations; that these are reached by the tax on capital stock, under the act of 1879. The fourth section of the act of 1885 only requires the treasurer of the corporation to assess the tax imposed by the first section, and as there is no tax imposed by that section, on mortgages, etc., in the hands of private corporations, it follows, of course, that they are not to be assessed in this form or any deduction made for taxes from the interest thereon.

Foreign corporations exercising their franchises under the laws of other states and countries, are beyond the reach of our processes of taxation. We could not require them ordinarily to comply with any such regulation of our law, and therefore they are necessarily excluded from the provisions of the act. Such foreign corporations as are engaged in business in the state, might doubtless be required to comply, as a condition of their right so to do, but this could only embarrass the action of the local assessor, and upon this ground doubtless they were wisely excluded from the operation of the act.

We are of opinion, therefore, for the reasons given, that the treasurer of the Delaware Division Canal Company was bound to make this assessment and to deduct the tax off the interest paid. The word, " of,' in the 4th section was doubtless intended for, " off "; this is a manifest blunder, and cannot be permitted to change the plain meaning of the legislature.

According to the findings of the learned judge of the court below, $800,000 of the bonds of the Delaware Division Canal Company were outstanding at the time specified in the return: of these $100,000 were held by non-residents of the state, and $415.000 by corporations of the state of Pennsylvania; the residue being $285,000 therefore, is all that would appear to be subject to the tax imposed by the first and fourth sections of the act of 1885.

That the defendants have a legal standing to contest the constitutionality of the law, and the validity of the settlement, we have no doubt; if the tax were illegal the company would

have been under no obligations to retain it, or to pay it to the state.

> The judgment is therefore reversed, and judgment is now entered against the defendant, and in favor of the commonwealth in the sum of $940.50, with interest at the rate of twelve per cent per annum from June 27, 1887, and costs.

